**RETAIL STORE EMPLOYEES UNION, LOCAL NO. 954, a/k/a Retail Clerks, Union Local No. 954, Plaintiff,**

v.

**LANE'S OF FINDLAY, INC., Defendant.**

No. C. 66-38.

United States District Court
N. D. Ohio, W. D.

Nov. 10, 1966.

Joseph E. Finley, Cleveland, Ohio, for plaintiff.

Leonard Lane, Cleveland, Ohio, for defendant.

## OPINION

DON J. YOUNG, District Judge.

This is an action by a labor union for a declaratory judgment and specific enforcement of a collective bargaining agreement executed by defendant-employer's predecessor. Jurisdiction is founded on section 301 of the Labor Management Relations Act, 61 Stat. 156 (1947), 29 U.S.C. § 185(a) (1964).

The pleadings and the depositions, exhibits and affidavits attached to cross-motions for summary judgment establish the following undisputed facts. On July 23, 1964 the plaintiff union and four other local unions affiliated with the Retail Clerks International Association,

AFL-CIO, entered into a contract with the Gallaher Drug Company, the owner and operator of a large retail drug chain.[1] The contract was to remain in effect until May 21, 1967 and was made expressly "binding upon the parties hereto, their successors and assigns." The usual arbitration and no-strike clauses were included.

Plaintiff union represented all the employees, with the exception of the pharmacists and a pharmacist-trainee at Gallaher's Findlay, Ohio store, located at 322 South Main Street. The number of represented employees does not appear in the record, but probably was less than half a dozen.

Defendant Lane's of Findlay, Inc. was incorporated on February 1, 1966. Its officers and directors are the same as those of the Lane Drug Company, the owner and operator of a chain of retail stores. On the date of its incorporation, defendant purchased from the Gallaher Drug Company certain of the furnishings, equipment, trade fixtures, merchandise and supplies located in the Findlay store. Defendant also assumed the lease for such location but did not acquire any other assets of Gallaher, such as accounts receivable, licenses or trade names, nor did defendant assume any of the liabilities or obligations of Gallaher, except for the aforementioned lease. No restrictive covenants regarding operations in Findlay or any other area were imposed on Gallaher.

Gallaher dismissed its Findlay store employees on or about January 31, 1966. The dismissed employees received severance pay and accrued vacation benefits.

Upon taking possession on February 1, defendant Lane's closed the store for all business except prescriptions. Two pharmacists and a pharmacist-trainee, all of whom had been employed by Gallaher, were hired by defendant. No other employees were hired at that time. About three weeks later, after remodeling and rearranging had taken place, the entire store was opened for business. Company executives handled sales for a short time until new employees were hired in March. The full complement of employees was completed in April.[2] None of the newly-hired employees were former Gallaher employees. According to the store manager, none of Gallaher's employees applied for employment and none were sought out.

Some of the Gallaher proprietary items were retained on defendant's shelves and some were removed. All of Gallaher's pharmaceuticals were retained. Defendant received its first truckload of its own merchandise about February 28.

Counsel for the union contacted the attorneys for the defendant in February, 1966, requesting that defendant honor the labor contract in effect between Gallaher and the union. The request was refused. Consequently, the union filed this suit on March 4, 1966.

Defendant asserts several technical grounds in its dismissal motion: (1) the complaint fails to state a claim upon which relief may be granted; (2) primary jurisdiction of this action rests with the National Labor Relations Board; and (3) this Court is without jurisdiction of the subject matter of this action. The Court has given careful consideration to each of these claims and finds them to be without merit.

The union rests its case on the 1964 United States Supreme Court decision in John Wiley & Sons, Inc. v. Livingston, 376 U.S. 543, 84 S.Ct. 909, 11 L.Ed.2d 898 (1964), and two of its progeny: United Steelworkers of America v. Reliance Universal, Inc., 335 F.2d 891 (3d Cir. 1964), and Wackenhut Corp. v. International Union, United Plant Guard Workers, 332 F.2d 954 (9th Cir. 1964).

1. Gallaher sometimes (or always, the record is not clear on this point) trades under the name of Revco Discount Drug Centers.

2. Six employees, comprising the manager, two cosmeticians and three check-out girls are employed full time. The part-time employees consist of four stock boys and a bookkeeper. Two pharmacists and a pharmacist-trainee round out defendant's work force.

*Wiley* presented the Supreme Court with the following situation. Interscience Publisher's Inc., a publishing firm employing eighty persons, was bound by a collective bargaining contract which covered one half of its employees and was due to expire on January 31, 1962. On October 2, 1961 Interscience merged with John Wiley & Sons, Inc., an employer of three hundred persons, and ceased to exist as a separate entity. All Interscience employees were subsequently employed by Wiley. Following Wiley's refusal to recognize the Interscience bargaining agreement for any purpose and about one week before expiration of the contract, the union brought suit "to compel Wiley to arbitrate the dispute between the parties concerning the effect of the consolidation upon the contract and the so-called 'vested' rights of the Union and the employees to continued payments by Wiley to the Interscience employee pension fund and to seniority, job security, grievance procedure, and vacation and severance pay, 'now and after January 30, 1962.' "[3]

A unanimous Court in a carefully limited opinion held that:

> the disappearance by merger of a corporate employer which has entered into a collective bargaining agreement with a union does not automatically terminate all rights of the employees covered by the agreement, and * * * in appropriate circumstances, present here, the successor employer may be required to arbitrate with the union under the agreement. John Wiley & Sons, Inc. v. Livingston, 376 U.S. 543, 548, 84 S.Ct. 909, 914 (1964).

The Court further noted that its holding was not to be confined to the merger context, id. at 549, 84 S.Ct. 909, and two appellate courts have since applied the *Wiley* doctrine to assets-purchase transactions. United Steelworkers of America v. Reliance Universal, Inc., supra; Wackenhut Corp. v. International Union, United Plant Guard Workers, supra.

In the present action the plaintiff union does not seek an order requiring the successor-employer to arbitrate, as did the union in *Wiley*, but instead seeks the broader remedy of specific enforcement of the entire agreement. This Court believes that in seeking such relief, the union misreads *Wiley*. The Supreme Court decided only that the company's *duty to arbitrate* survived the business transfer. The source of that duty was found to repose in the labor contract "construed in the context of a national labor policy." *Wiley*, supra, 376 U.S. at 551, 84 S.Ct. at 915. And that policy, as expressed by the Court throughout its opinion and on numerous other occasions, recognizes arbitration as a substitute for tests of strength between contending forces, occupying a central role in resolving disputes and avoiding industrial strife. It was for the promotion and protection of this policy that the *Wiley* doctrine was expressly designed.

It may be argued that the Court had no choice of disposition in *Wiley* since the union did not request specific enforcement of the entire contract, but only an order compelling arbitration. Technically, this is so but it does not meet the problem. In order for *this* Court to grant specific enforcement it must pass on the merits of the successorship issue. In *Wiley*, despite the union's request for arbitration, the Court could have determined that the proper tribunal for resolution of the successorship issue is the district court. Instead, the Court specifically delegated the successorship issue.[4]

Other courts have analyzed *Wiley* in the same manner. The Court of Appeals

---

3. Livingston v. John Wiley & Sons, Inc., 313 F.2d 52, 55 (2d Cir. 1962), aff'd on other grounds, 376 U.S. 543, 84 S.Ct. 909 (1964).

4. John Wiley & Sons, Inc. v. Livingston, 376 U.S. 543, 555, 84 S.Ct. 909, 917 (1964): "Whether or not the Union's demands have merit will be determined by the arbitrator in light of the fully developed facts."

for the Third Circuit, recognizing the contrary view of the Ninth Circuit, has expressed its conclusion as follows:

"The opposing parties here have argued for and against the proposition that the collective bargaining agreement is unqualifiedly binding upon [the successor-employer] * * * But, in the Wiley case, the Supreme Court seems to have been careful to avoid so broad a ruling. It merely reasoned and decided that federal labor law imposed upon a succeeding proprietor a duty to arbitrate those questions which his predecessor was bound to arbitrate under his labor contract." (Footnote omitted.) United Steelworkers of America v. Reliance Universal, Inc., 335 F.2d 891, 894–895 (3d Cir. 1964).

Similarly, District Judge Tenney of the Southern District of New York has stated:

"I do not hold that the rights from whose breach the grievances arose survived the purchase and are binding upon [the successor-employer] * * * or that the entire collective bargaining agreement survived the purchase. To decide that issue is to grant specific performance of the collective bargaining agreement and to usurp the function of the arbitrator. It is for him to fashion a remedy * * *" McGuire v. Humble Oil & Refining Co., 247 F.Supp. 113, 127 (S.D.N.Y.1965), rev'd on other grounds, 355 F.2d 352 (2d Cir.), cert. denied, 384 U.S. 988, 86 S.Ct. 1889, 16 L.Ed.2d 1004 (1966).

■ This Court realizes that in this particular area of federal labor law, an area where the federal district courts have been specifically charged with the duty to fashion substantive law from our national labor policy, Textile Workers Union of America v. Lincoln Mills of Ala., 353 U.S. 448, 456–457, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957), it ill-behooves a court to read into a Supreme Court decision limitations which are not there. One can always find nice distinctions when comparing any two cases. Yet the fact that the Supreme Court was presented with the opportunity to invest the courts with the duty to resolve the successorship issue, but declined to do so, cannot be ignored. For this reason, and others previously mentioned, the union's demand for specific enforcement of the entire collective bargaining agreement must be denied.

■ The foregoing determination perhaps moots other issues in this case. But for the sake of avoiding piece-meal resolution of this dispute it would seem proper that plaintiff's complaint be considered amended to include a demand for specific enforcement of the arbitration clause of the labor agreement. Defendant suffers no prejudice from such procedure for its brief adequately meets such contingency.

■ As has been said before, the Court's only function is to determine whether or not the defendant must arbitrate. The merits of the successorship issue are for the arbitrator. But this is not to say that the Court acts as a mere conduit which channels all cases to arbitration for the *Wiley* Court specifically stated that it did not hold "that in every case in which the ownership or corporate structure of an enterprise is changed the duty to arbitrate survives." John Wiley & Sons, Inc. v. Livingston, 376 U.S. 543, 551, 84 S.Ct. 909, 915 (1964). The test to be applied is that of "substantial continuity of identity in the business enterprise before and after a change." Id. at 551, 84 S.Ct. at 915. The precise meaning of this test may vary, however, according to the viewpoint adopted.

From the employee's viewpoint there has perhaps been little change in the "business enterprise." Defendant makes much of the differences in marketing methods between the two operations. Gallaher sold drugs, cigarettes, a limited line of cosmetics and very few sundries, whereas the defendant now sells drugs, cigars, pipes, cigarettes, a full line of cosmetics, photo equipment, and a great variety of sundries. Gallaher's opera-

tion was almost entirely self-serve, whereas defendant's "departmentalized" operation offers greater service to customers. Separate registers are maintained in the cigar department as well as the photo and cosmetic departments but the hardware or sundries section of the store is operated on a self-serve basis.

Due to these differences in operation it may well be that a Gallaher employee who had worked under a limited-line, discount-type operation might require additional training in order to fit into defendant's department store-type operation, but on the whole, insofar as the employer-employee relationship is concerned, these differences cannot be regarded as substantial.

On the other hand, from the standpoint of the type of business transaction here involved, there is very little that links the so-called predecessor to the so-called successor. An assigned lease, some fixtures, supplies, and merchandise, these comprise the tenuous and slight connection between the parties.

Other reported decisions which have considered the effect of assets-purchase transactions shed no particular light on the problem at hand. In the *Reliance* case the predecessor-employer was forced under order of the federal trade commission to divest itself of its Bridgeville plant. Reliance purchased the plant as a going concern, assuming all the obligations of the business with the exception of any obligations under the predecessor's collective bargaining agreement.

In *Wackenhut* the purchaser acquired substantially all of the seller's assets and assumed substantially all of the seller's monetary liabilities. Among the acquired assets were various leaseholds, customer contracts and customer lists, all assignable permits and licenses, trade names and trade-marks, and the seller's

detailed records. The seller also covenanted not to compete.

In both of the above cases the courts were confronted with polar situations. Everything continued as before, only the corporate names changed. The situation presented by the present case is quite different. Here we have one chain of retail drug stores, with a labor contract covering all of its stores, terminating its business at a particular location. The lease is assigned to a corporation which is also a part of a chain of retail stores. Some physical assets are transferred. That is all. The two chains continue in business. The buyer's marketing methods differ somewhat from that of the seller but for all practical purposes the employer-employee relationship has not been substantially altered. If the change that has taken place is to be viewed solely from the employee's standpoint, then perhaps an order requiring arbitration would be proper. But this Court is not convinced that such is presently the law.

■ Upon viewing all of the circumstances of the business transfer here involved, the Court holds that there is a lack of a substantial continuity of identity in the business enterprise and thus the defendant should not be required to arbitrate. The labor contract should not be made to "run with the lease." The prerogative of this defendant to commence operations at a store location formerly occupied by a retailer in the same business is not outweighed by employee interests. Those interests possess an element of protection not present in *Wiley*, namely, the continued existence of the signatory party to the labor contract and thus its continuing availability to fulfill its commitments.

Defendant may submit an order sustaining its motion for summary judgment and overruling plaintiff's motion.