The WACKENHUT CORPORATION, a Florida corporation, Appellant,

v.

INTERNATIONAL UNION, UNITED PLANT GUARD WORKERS OF AMERICA, and its Local 151, voluntary unincorporated Associations, Appellees.

No. 18731.

United States Court of Appeals
Ninth Circuit.
June 10, 1964.

Richard H. W. Maloy, Coral Gables, Fla., and Quentin L. Kopp and David Skinner, Jr., San Francisco, Cal., for appellant.

Livingston, Ross & Van Lopik, Winston L. Livingston and Nancy Jean Van Lopik, Detroit, Mich., and Alfred A. Affinito, Pittsburg, Cal., for appellees.

Before HAMLEY, JERTBERG and MERRILL, Circuit Judges.

HAMLEY, Circuit Judge.

Two unions brought this action against an employer to enforce the arbitration provision of a labor agreement. The plaintiffs are International Union, United Plant Guard Workers of America (International), and its affiliated Local No. 151 (Local). The defendant is The Wackenhut Corporation (Wackenhut). Federal jurisdiction was invoked under section 301 of the Labor Management Relations Act, 1947 (Act), 61 Stat. 156, 29 U.S.C. § 185 (1958), and the United States Arbitration Act, 9 U.S.C. § 1 et seq. (1958).

The labor agreement provided for certain wage increases, and contained certain union shop and dues checkoff provisions which Wackenhut had refused to put into effect or submit to arbitration. It took this position, and in this suit resists the effort to enforce arbitration, on the ground that it is not bound by the labor agreement in question. That agreement had been entered into, not by Wackenhut, but by General Plant Protection Co. (General Plant). Wackenhut had thereafter purchased the business and assets of General Plant but had not expressly assumed the obligations of General Plant's labor agreement.

At the outset of the trial the unions advanced three theories any one of which, if sustained, would entitle them to the relief sought. These theories are: (1) By reason of an exchange of telegrams, together with certain telephone conversations, Wackenhut expressly agreed to be bound by the labor agreement; (2) Wackenhut pursued a course of conduct which estops it from denying that it is bound by the labor agreement; and (3) Wackenhut as the successor employer is, under the circumstances of this case, and apart from the subsequent agreement or principles of estoppel, bound by the labor agreement of its predecessor, General Plant.

The trial court accepted the first of these theories and did not pass on the other two. This view was reflected in the findings of fact and conclusions of law which were entered followed by a judgment for plaintiffs. The judgment contains a declaration that Wackenhut is bound by the collective bargaining agreement and a direction to that company to submit the grievances of the union, relating to wages, checkoff of dues and union shop, to arbitration pursuant to the arbitration provision of the contract.

Wackenhut appeals, challenging on several grounds, the trial court's findings and conclusions that Wackenhut had expressly agreed to be bound by the labor agreement. The company also urges that the trial court erred in failing to decide the question of whether Wackenhut was bound by the labor agreement as the successor of General Plant, and in not deciding that question in favor of Wackenhut. The unions defend the findings and conclusions which were entered and argue that it was not necessary for the trial court to consider the union's alternative theories of estoppel and liability as a successor. But if these theories are reached, the unions contend, each would have to be decided in favor of the unions.

The pertinent facts are essentially undisputed.[1] For many years General

---

1. The company did not produce any evidence and conducted only brief cross-examination of two of the union's three witnesses. The parties entered into an extensive stipulation of facts.

Plant was a California limited partnership engaged in providing guard service for California oil and chemical plants. After May 16, 1962, the limited partnership was comprised of Ralph E. Davis, general partner, and seven limited partners. One of the areas served by the company was at Martinez, California, where an office was maintained, and sixty-five employees worked.

On December 7, 1956, the unions referred to above were certified as exclusive bargaining representatives for the General Plant employees working in the Martinez area. Thereafter, the unions and General Plant entered into successive bargaining agreements covering the wages, hours and other terms and conditions of employment for these employees. The most recent agreement of this kind was entered into on July 14, 1961, and was to run for a period of three years.

The agreement covers wages, hours, seniority, vacations, sick leave, insurance and contains certain other terms and conditions of employment. Among other things, the agreement provides for payment of an additional five cents per hour to employees covered, effective July 14, 1962, and for payment of another additional five cents effective July 14, 1963. The agreement also provides for a union shop and contains an authorization for checkoff of dues. A grievance procedure for settlement of all complaints, questions or disputes concerning the agreement is contained in the agreement, the third step of which calls for a "final and binding decision" by an arbitrator.

On May 16, 1962, General Plant entered into an agreement with Wackenhut to sell to the latter company substantially all of the assets of General Plant. Wackenhut is a Florida corporation, qualified to do business in California, engaged in the business of furnishing service similar to that provided by General Plant.

Under the contract of purchase and sale, Wackenhut assumed substantially all of the monetary liabilities of General Plant, but did not expressly assume General Plant's existing labor agreements. Among the assets acquired by Wackenhut were General Plant's leaseholds in various properties, all of its contracts with customers and all customer lists, all assignable permits and licenses, General Plant's trade names and trademarks, the company's detailed records sufficient to identify the described assets, and the name "General Plant Protection Company." General Plant also covenanted not to compete.

On August 18, Davis, as general partner of General Plant, notified the unions that a sale of that company's physical assets had been consummated. As of August 27, 1963, the unions were advised, General Plant would discontinue its operations. The unions were further notified that the employees of General Plant would be terminated as of August 27, and that all accrued benefits and wages due its employees would be paid to them by General Plant "as of their termination." On August 20, 1962, Davis, as general partner of General Plant, posted a notice to all employees of that company, giving them the same information. Davis also stated in this notice that he had made arrangements to become associated with Wackenhut as a director and consultant, and expressed the hope "that many of you will make application to join this fine company."

On the same day, August 20, 1962, Wackenhut posted a notice to all General Plant employees, inviting them to make application for employment with Wackenhut. Set forth in this notice were the wages and some of the benefits which would be available to General Plant employees, if they should become employees of Wackenhut.

When the officials of the Local learned of the sale, they called a meeting for August 23, 1962 to consider possible strike action. There were then certain telephone conversations and an exchange of telegrams between union officials and management as a result of which the

Local decided not to strike. Instead, it adopted a resolution which demanded that Wackenhut "as successor employer" recognize the existing collective bargaining agreement.

On August 27, 1962, General Plant discontinued guard service, including that being rendered in the Martinez area, and Wackenhut began rendering the identical service. Wackenhut thereafter used the same office facilities and equipment as had General Plant at the same location in Martinez, retaining on the door, the General Plant name. B. J. Roberts, who had been the supervisor for General Plant in that area continued to perform the same functions for Wackenhut, although his title was changed from district manager to area supervisor. H. N. Weitz, who had been Roberts' assistant at Martinez prior to the change-over, performed similar duties from August 27, 1962 until December 31, 1962, at which time he became plant supervisor for Wackenhut at another location.

On August 27, 1962, Davis, who had been general partner of General Plant, became a director and consultant with Wackenhut. At that time he purchased two thousand shares of the 518,000 shares of Wackenhut outstanding.[2] The district court declined to find that the business formerly carried on by General Plant became a "division" of Wackenhut.

Nevertheless, on and after August 27, 1962, the company's letterhead read "General Plant Protection Company, a Division of the Wackenhut Corporation."

All or most of the sixty-five General Plant employees working in the Martinez area began working for Wackenhut on August 27, 1962. Apparently none of these General Plant employees applied to Wackenhut for such employment, being instructed by the Local not to do so. It also appears that on and after August 27, 1962, as before, these employees were wearing the same uniforms with the General Plant insignia, had the same duties, carried the same weapons, and answered to the same supervisory personnel.[3]

In all respects except the granting of the wage increase, and the fulfillment of union shop and dues checkoff provisions, referred to earlier in this opinion, Wackenhut accorded the former General Plant employees in the Martinez area the same rights and benefits which they would have had if the collective bargaining agreement with General Plant were still in effect.[4]

In our opinion the judgment for the unions is not sustainable on the ground, relied upon by the trial court, that subsequent to the sale by General Plant to Wackenhut, the latter agreed to fulfill the obligations of the General Plant col-

2. At the same time several executives of General Plant assumed comparable positions with Wackenhut. Maurice H. Hines, who had been manager of operations for General Plant, became manager, guard and patrol operations, for Wackenhut. C. E. Moore, who had been controller for General Plant, became regional accounting manager for Wackenhut. V. W. Heinzerling, who had been manager, sales and contracts, for General Plant, became director, western regional development for Wackenhut.

3. Richard Anthony, who is president of Local 151, and who had been an employee of General Plant at Martinez, testified that he went to work as usual on August 27, 1962, wearing the same uniform bearing the General Plant insignia, performed the same duties under the

same plant supervisor, carried the same weapons, and that these conditions still prevailed at the time of the trial. He testified that he did not personally receive any termination notice from General Plant, did not apply for employment with Wackenhut, and was not required by Wackenhut to take a physical examination.

4. The General Plant seniority list for employees in the Martinez area has been followed with respect to layoffs, Wackenhut having published this list in September, 1962. Employees have been granted sick leave and double pay for holidays, as under the General Plant agreement. Similarly, union officials employed by Wackenhut have been granted leaves of absence for union business.

lective bargaining agreement. No purpose will be served by stating our reasons for reaching this conclusion because we hold that the judgment is in any event sustainable on another ground urged at the trial and renewed here. That ground is that under the circumstances of this case, and apart from the exchange of telegrams and the telephone conversations referred to above, the policy of the national labor laws obligates Wackenhut, as the successor employer, to honor the collective bargaining agreement entered into by its predecessor, General Plant.

This conclusion, we believe, is required by the recent decision of the Supreme Court in John Wiley & Sons, Inc. v. Livingston, 376 U.S. 543, 84 S.Ct. 909, 11 L. Ed.2d 898, rendered after the appeal was taken in the case before us. In that case it appeared that Interscience Publishers, Inc., after entering into a collective bargaining agreement, which included an arbitration provision, merged with John Wiley & Sons, Inc., and ceased to do business as a separate entity. There was then a wholesale transfer of employees from Interscience to Wiley which engaged in the same business. The Supreme Court held that Wiley, as the successor employer, is bound by the preëxisting labor agreement and is obligated to arbitrate grievances presented by the union which is a party to that agreement.

There are statements in the opinion of the Supreme Court in Wiley which, considered separately, might appear to indicate that the fact that the change of employers had been accomplished by a merger, rather than by a sale and purchase of assets as in our case, was a controlling factor in reaching the result indicated. Reading the opinion as a whole, however, we are convinced that the Supreme Court did not rest the decision in Wiley on that narrow ground, but upon a broader view dictated by the policy of the national labor laws.

What the Supreme Court did in Wiley was to balance the rightful prerogative of owners independently to rearrange their businesses and even eliminate themselves as employers against the necessity of affording some protection to the employees covered by a collective bargaining agreement containing an arbitration clause, from a sudden change in the employment relationship. Having in view the objectives of national labor policy reflected in established principles of federal law, the court held the described interest of the employees outweighs that of the employer, and must prevail.

◼ The specific rule which we derive from Wiley is that where there is substantial similarity of operation and continuity of identity of the business enterprise before and after a change in ownership, a collective bargaining agreement containing an arbitration provision, entered into by the predecessor employer is binding upon the successor employer.

◼ In Wiley as in our case, the successor employer was substantially larger than the predecessor and there, as here, substantially all of the employees of the predecessor were accepted as employees of the successor. It follows that the observation made in Wiley, 376 U.S. at page 551, 84 S.Ct. at page 915, that

"* * * relevant similarity and continuity of operation across the change in ownership is adequately evidenced by the wholesale transfer of Interscience employees to the Wiley plant, apparently without difficulty,"

is equally applicable here. It follows that under the rule of Wiley, Wackenhut is bound by the collective bargaining agreement entered into by General Plant, and is bound thereunder to arbitrate the union grievances as ordered by the district court.

The judgment is affirmed. This decision having been rendered after rehearing, the certified copy of the judgment shall issue forthwith.