**RETAIL CLERKS UNION LOCAL NO. 1552, etc., Plaintiff,**

v.

**LYNN DRUG COMPANY OF SPRING-FIELD SOUTHERN VILLAGE et al., Defendants.**

**Civ. A. 7636.**

United States District Court
S. D. Ohio, E. D.

May 22, 1969.

Sigall & Sigall, Leonard S. Sigall, Columbus, Ohio, for plaintiff.

Vorys, Sater, Seymour & Pease, Charles D. Minor, Columbus, Ohio, for defendants.

## MEMORANDUM OPINION AND ORDER

KINNEARY, District Judge.

The complaint filed herein under Section 301 of the Labor Management Relations Act, 29 U.S.C.A. § 185, seeks enforcement of a labor agreement against a successor employer under the principles announced in John Wiley & Sons, Inc. v. Livingston, 376 U.S. 543, 84 S.Ct. 909, 11 L.Ed.2d 898 (1964). The facts have been stipulated, and the matter is before the Court on a joint motion for summary judgment.

*Facts*

On November 12, 1963, the plaintiff, Retail Clerks Union, Local 1552, Retail Clerks International Association, AFL–CIO entered into a collective bargaining agreement with Gray Drug Stores, Inc. of Dayton, Gray Drug Stores, Inc. of Fairborn, Gray Drug Stores, Inc. of Springfield Southern Village, King Discount Distributors, Inc. of Dayton and King Discount Distributors, Inc. of Springfield. The agreement was to terminate on August 27, 1966.

On or about June 10, 1965, while this agreement was continuing in effect, Gray Drug Stores, Inc. of Springfield Southern Village sold the assets of its store located at Selma Road in Springfield, Ohio, to the defendant Lynn Drug Company of Springfield Southern Village (hereinafter Lynn Drug—Springfield). Following this purchase, Lynn Drug—Springfield introduced to the Selma Road Store the product lines, merchandising techniques and general operating procedures used by the Lynn Drug Company in its other drug stores in and around Columbus, Ohio. These product lines, merchandising techniques and operating procedures did not differ materially from those of Gray Drug Stores, Inc. of Springfield Southern Village.

At the time of the sale there were eight (8) employees in the bargaining unit. Lynn Drug—Springfield replaced the manager with a manager from one of the Lynn Drug Company's stores in Columbus, Ohio.

Lynn Drug—Springfield requested all employees to take a lie detector test as a condition of employment. All the employees who had previously worked for Gray Drug at the Selma Road Store took the test, passed the test and were retained by Lynn Drug—Springfield, except Betty O'Connell and Pat McClintock. These employees refused to take the test, and, thereafter, were told by Lynn Drug—Springfield that they would have to take the test or look for other employment. When they continued to refuse to take the test, Lynn Drug—Springfield separated them from its employ; Betty O'Connell on June 16, 1965, and Pat McClintock on June 24, 1965. The discharged employees were told that if, within a reasonable time, they agreed to take the test and passed, they would be re-employed.

On June 25, 1965, Kenneth Mitchell, Secretary-Treasurer of the Retail Clerks Union, sent a letter to Lynn Drug—Springfield stating that the two employees were not discharged for proper cause and requested reinstatement with no loss of seniority or wages. On August 6, 1965, the union's attorney wrote a letter to the president of Lynn Drug—Springfield requesting him to meet with the union to discuss the separations. This letter stated that if no agreement could be reached at such a meeting, the matter of the discharges should be submitted to arbitration in accordance with Article IV, Paragraph C of the bargaining agreement.

On August 9, 1965, Lynn Drug—Springfield replied, denying that Lynn Drug—Springfield or the Lynn Drug Company were parties to the bargaining agreement and bound by its terms. Although the letter stated that the president of Lynn Drug—Springfield would meet with Mr. Mitchell to discuss the situation, this willingness to discuss the situation should not be construed as recognition by Lynn Drug—Springfield of the Retail Clerks Union as the bargaining representative of its employees, nor as an acknowledgment that the company was bound by the bargaining agreement

with Gray Drug. They met, and the company refused to recognize the union and refused to arbitrate the discharges.

On December 8, 1965, the Retail Clerks Union filed this action, asking the Court to enter its Order as follows:

1. Enforcing defendants' obligation under said contract to recognize plaintiff as the sole collective bargaining representative of defendants' employees at the aforementioned store.

2. Enforcing defendants' obligation to comply with all of the terms and conditions of said contract in the same manner and to the same extent that defendants' predecessor would be required to comply with said contract.

3. Enforcing specifically defendants' obligation to take up the complaint concerning the discharges of employees Betty O'Connell and Pat McClintock, and, failing agreement, to submit said complaint to final and binding arbitration.

4. Enforcing specifically defendants' obligation under Article II and III of said contract by ordering defendant to make an accounting to plaintiff of the net earnings of all of its employees at said store since, on and after the date of its purchase of said store, and by ordering defendant to make plaintiff whole for all losses of dues and initiation fees caused by defendants' breach of contract.

5. For such other relief as may be just, equitable and proper.

The Selma Road Store has remained open throughout the time period in question, and as of the date of this stipulation five (5) out of the eight (8) original employees who were in the union's bargaining unit were still employed at that store.

*Jurisdiction*

Although the jurisdictional allegations in the complaint were denied by defendants in their answers, both de-

fendants and plaintiff agree, now, that, (1) plaintiff is a labor organization which represents employees in retail industries and in other industries, which industries affect interstate commerce, (2) defendants are corporations having common ownership and control and a single labor relations policy, and are an employer whose activities affect interstate commerce, and, (3) this action arises from an alleged violation of a labor agreement.

It is determined, therefore, that this Court has jurisdiction of this action by virtue of Section 301 of the Labor Management Relations Act, 29 U.S.C.A. § 185 (a).[1]

*Union's Position*

The union argues that the decision of the Supreme Court of the United States in John Wiley & Sons, Inc. v. Livingston, 376 U.S. 543, 84 S.Ct. 909 (1964) entitles the union to the injunctive relief requested. It is stated that the primary issue is whether or not the successor employer, Lynn Drug—Springfield, can show a "lack of substantial continuity of identity in the business enterprise" before and after the change of ownership so as to relieve itself of the obligations of the collective bargaining agreement. *Wiley, supra,* 376 U.S. at 551, 84 S.Ct. at 915. It is then argued that, in this case, Lynn Drug—Springfield cannot show such a lack of continuity, and, therefore, it is bound by the bargaining agreement to the same extent as was Gray Drug Stores, Inc. of Springfield Southern Village.

*Employer's Position*

Defendants also rely on *Wiley,* albeit a narrower interpretation. They argue that under *Wiley* a court has the authority to enforce an arbitration provision of a labor contract against a successor em-

ployer, but is without authority to enforce the bargaining agreement itself against such an employer. It is further specifically argued that a court is without authority to enforce the recognition and union security provisions of the bargaining agreement. Finally, although defendants concede that the Court has the power to require a successor employer to arbitrate grievances under its predecessor's agreement, they argue that the grievances must have been properly presented and preserved, and that that is not the situation in this action.

*Successorship*

The question of whether the relationship between the Retail Clerks Union and Lynn Drug—Springfield is that of labor organization and successor-employer within the meaning of *Wiley* permits easy resolution. An examination of the cases which have dealt with this issue discloses certain factors which are deemed relevant in determining whether the business operation continued substantially unchanged. First, did the successor and predecessor employers engage in the identical or very similar business? *Wiley, supra,* 376 U.S. at 551, 84 S.Ct. 909; Wackenhut Corp. v. International Union, United Plant Guard Workers of America, 332 F.2d 954, 958 (9th Cir. 1964); McGuire v. Humble Oil & Refining Co., 247 F.Supp. 113, 118 (S.D. N.Y.1965). Next, did the successor and predecessor employer utilize the same office and/or equipment? *Wackenhut Corp., supra,* 332 F.2d at 957; *McGuire, supra.* Did the business continue to operate in the transition period? Retail Store Emp. Union, Local No. 954 v. Lane's of Findlay, Inc., 260 F.Supp. 655, 656 (N.D.Ohio 1966). Finally, was there a substantial carryover of employees from the predecessor to the successor employer? *Wiley, supra,* 376 U.S. at 551,

---

1. Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

84 S.Ct. 909; *McGuire, supra,* 247 F. Supp. at 118; *Wackenhut, supra,* 332 F. 2d at 958; *Lane's supra,* 260 F.Supp. at 656; Owens-Illinois, Inc. v. District 65, Retail, Wholesale and Dept. Store Union, AFL–CIO, 276 F.Supp. 740, 741 (S.D. N.Y.1967), aff'd 393 F.2d 932 (1968).

■ As stated previously, the Selma Road Store operated continuously throughout the transfer period, the product lines, merchandising techniques and operating procedures of Gray Drug and Lynn Drug—Springfield were similar and there was a substantial carryover of employees. The Court determines, therefore, that Lynn Drug—Springfield is a successor employer within the meaning of *Wiley.*

It makes no difference that the transaction between Gray Drug and Lynn Drug—Springfield took the form of a sale of assets whereas *Wiley* involved the merger of two corporations. The rationale of *Wiley* that:

> It would derogate from "[t]he federal policy of settling labor disputes by arbitration," [citing cases] if a change in the corporate structure or ownership of a business enterprise had the automatic consequence of removing a duty to arbitrate previously established; this is so as much in cases like the present, where the contracting employer disappears into another by merger, as in those in which one owner replaces another but the business entity remains the same. (376 U.S. 543, 549, 84 S.Ct. 909, 914.)

applies equally to corporate ownership changes resulting from asset sales. United Steelworkers of America v. Reliance Universal, Inc. of Ohio, 335 F.2d 891 (3d Cir. 1964); United States Gypsum Co. v. United Steelworkers of America, AFL–CIO, 384 F.2d 38 (5th Cir. 1967) cert. den. 389 U.S. 1042, 88 S.Ct. 783, 19 L.Ed.2d 832; *Wackenhut Corp. supra; McGuire, supra;* Local Joint Executive Bd., Hotel and Restaurant Emp. and Bartenders Intern. Union v. Joden, Inc., 262 F.Supp. 390 (Mass.1966).

*Arbitration*

*Wiley* said, "in appropriate circumstances * * * the successor employer may be required to arbitrate with the union under the agreement." This is so, because:

> [e]mployees, and the union which represent them, ordinarily do not take part in negotiations leading to a change in corporate ownership. The negotiations will ordinarily not concern the well being of the employees, whose advantage or disadvantage, potentially great, will inevitably be incidental to the main considerations. The objectives of national labor policy * * * require that the rightful prerogative of owners independently to rearrange their businesses * * * be balanced by some protection to the employees from a sudden change in the employment relationship. *Wiley,* 376 U.S. 543, 549, 84 S.Ct. 909, 914.

There are no circumstances present in this action demanding a different result. The Court determines, therefore, that Lynn Drug—Springfield is bound to arbitrate under the arbitration provisions of the bargaining agreement entered into between Gray Drug and the Retail Clerks Union as aforesaid.

*Arbitrable Questions*

Having determined that Lynn Drug—Springfield is a successor employer and that it is bound by the national labor policy to arbitrate under the agreement of its predecessor, the question arises as to what issues must be arbitrated. Under Supreme Court decisions, "whether or not the company was bound to arbitrate, as well as what issues it must arbitrate, is a matter to be determined by the Court on the basis of the contract entered into by the parties." Atkinson v. Sinclair Refining Co., 370 U.S. 238, 241, 82 S.Ct. 1318, 1320, 8 L.Ed.2d 462 (1962).

■ The contract entered into by the parties to this action contains, *inter alia,* a recognition provision (Article I), a union security provision (Article II), a dues check off provision (Article III)

and a provision concerning the settling of disputes (Article IV). Paragraph C of Article IV provides that disputes arising from the discharge of any worker shall be referred to arbitration if the employer and the union fail to settle the dispute by agreement within a certain time following a written complaint by the union. It is apparent that arbitration of discharges of employees was contemplated by the parties to the agreement, and therefore, such arbitration may be compelled. See *Wiley, supra,* 376 U.S. at 547, 84 S.Ct. 909.

Interestingly, both plaintiff and defendants agree that this Court could properly order the question of the discharges to arbitration, and the complaint, it should be noted, requests arbitration only with respect to these discharges. The dispute over remedy concerns plaintiff's request for specific enforcement of the recognition, security and dues check of provisions of the bargaining agreement.

The union urges that the protection of employees from sudden changes in ownership which the Supreme Court considered important in *Wiley* demands enforcement of these provisions at the outset. The union should not be required, it is said, to first seek enforcement of the arbitration provisions, then arbitrate and then seek enforcement of the arbitration award. Especially is this true, the union urges, with respect to union recognition, security and dues check off which are not "common law of the shop" matters normally considered by arbitrators.

Defendants contend, however, that *Wiley* does not give this Court authority to enforce a bargaining agreement against a successor employer, and, therefore, the fundamental principle that a purchasing corporation is not liable for the obligations of its transferor is applicable. 15 Fletcher, Private Corporation (1961 rev. ed.) § 7122. In the present context, the exception to that principle which was developed in *Wiley* is related solely to arbitration. Defendants also argue, in the alternative, that

the disputes have not been properly preserved by the union, thus depriving the union of the right to relief herein.

*Wiley* did not concern the enforcement of a labor contract against a successor, but, as stated by defendants, was limited to a consideration of arbitration. That Court stated the issues to be:

> * * * whether a corporate employer must arbitrate with a union under a bargaining agreement between the union and another corporation which has merged with the employer, and, if so, (2) whether the courts or the arbitrator is the appropriate body to decide whether procedural prerequisites which, under the bargaining agreement, condition the duty to arbitrate have been met. 376 U.S. 544, 84 S.Ct. 911.

By its own terms the discussion was limited to a consideration of arbitration.

> It would derogate from "[t]he federal policy of settling labor disputes by *arbitration,*" * * *
>
> * * * * * *
>
> The transition from one corporate organization to another will in most cases be eased and industrial strife avoided if employees' claims continue to be resolved by *arbitration* * * *.
>
> * * * * * *
>
> The preference of national labor policy for *arbitration* as a substitute for tests of strength * * *. *Wiley, supra,* 376 U.S. at 549, 84 S.Ct. at 914. [Emphasis added]

While it is true that the plaintiff in *Wiley* sought only arbitration, this offers no comfort to plaintiff herein, because the holding of that case cannot be expanded by omission.

The enforcement-arbitration issue has been considered and decided contrary to plaintiff's position in United Steelworkers of America v. Reliance Universal Inc. of Ohio, *supra* and McGuire v. Humble Oil & Refining Co., *supra.* The Court of Appeals for the Fifth Circuit, in United States Gypsum Co. v. United Steelworkers of America, AFL–

CIO, 384 F.2d 38 (1967) affirmed the district court's order requiring the successor employer to proceed to arbitration on the issues of contract assumption, recognition, check off of dues and seniority. The Court upheld the arbitrability of these issues but explicitly refrained comment on the merits of the issues and the enforceability of the subsequently expected decision of the arbitrator. In *Wiley*, one of the issues ordered submitted to arbitration was "whether the job security and grievance provisions of the contract between the parties shall continue in full force and effect." 376 U.S. 552, 84 S.Ct. 916. It thus appears that while specific enforcement of the recognition, union security and dues check off provisions is not the proper remedy, that an order compelling arbitration of these issues in this situation may help prevent industrial strife. This Court will not hold that a failure to seek one type of relief in favor of another, especially in this area of labor law wherein the cases are in conflict as to the proper remedy, is such an error as to preclude equitable relief in the form of an order of compulsory arbitration.

■ The only stumbling blocks to this solution urged by defendants are the failure of the union to properly raise and preserve the disputed questions and the expiration of the bargaining agreement, by its own terms, in August, 1966. The question of "procedural" arbitrability was raised in *Wiley*, and it was stated:

> Questions concerning the procedural prerequisites to arbitration do not arise in a vacuum; they develop in the context of an actual dispute * * *.
>
> * * * * * *
>
> * * * consistent refusal to recognize the Union's representative status after the merger made it "utterly futile—and a little bit ridiculous to follow the grievance steps as set forth * * *."
>
> * * * * * *

Once it is determined * * * that the parties are obligated to submit the subject matter of dispute to arbitration, "procedural" questions which grow out of the dispute * * * should be left to the arbitrator. 376 U.S. 556, 557, 84 S.Ct. 918.

To the extent that this portion of *Wiley* conflicts with Danner Press, Inc. v. N. L. R. B., 374 F.2d 230 (6th Cir. 1967), the latter must yield.

■ Lastly, the fact that the bargaining agreement has terminated does not in every instance preclude relief, *United States Gypsum Co., supra,* and, in light of the order to follow, in this action is a factor for the consideration of the arbitrator.

Based upon the foregoing, there being no dispute of fact herein, the Court determines that *plaintiff's* motion for summary judgment is meritorious and is hereby granted to the extent that it requests arbitration of the discharges of Betty O'Connell and Pat McClintock and further equitable relief as indicated below.

Based on the foregoing, there being no dispute of fact herein, the Court determines that *defendants'* motion for summary judgment is meritorious and is hereby granted to the extent that it requests arbitration of the discharges of Betty O'Connell and Pat McClintock.

Whereupon, Retail Clerks Union Local 1552, Retail Clerks International Association, AFL–CIO and Lynn Drug Company and Lynn Drug Company of Springfield Southern Village are hereby ordered to proceed to arbitration on the disputes revolving around and arising out of the sale of the assets of the Selma Road Store from Gray Drug Company to Lynn Drug Company of Springfield Southern Village, specifically:

A. The discharges of Betty O'Connell and Pat McClintock;

B. The viability, throughout the time period from the sale to the termination date of the agreement and to the present, of the recognition provision, the union security provision and the dues check off provision of the labor agreement entered into by Retail Clerks Local Union No.

1552 and Gray Drug Company on November 12, 1963; and

C. The continuing viability, throughout the time period from the sale to the present, of Articles V, VI, VII, VIII, IX, X, XI, XII, XIII, XIV, XV, XVI, XVII and XVIII of the labor agreement entered into by plaintiff, Retail Clerks Local Union No. 1552, and Gray Drug Company, on November 12, 1963.

It is so ordered.