Arthur R. Seidel and Joyce M. Seidel, et al. [1] v. Commissioner. Seidel v. Commissioner
Docket Nos. 3992-68, 3993-68, 3994-68, 5609-69, 5610-69, 5611-69.
United States Tax Court
T.C. Memo 1971-238; 1971 Tax Ct. Memo LEXIS 95; 30 T.C.M. (CCH) 1021; T.C.M. (RIA) 71238; September 16, 1971, Filed. *95 (1) On November 30, 1966, C resolved to pay the medical expenses of K and S, its sole shareholders and only employees. Held, payments made with respect to expenses incurred prior to such date were not made according to a plan within the meaning of sec. 105, I.R.C. 1954, and such payments represent dividends to the extent of earnings and profits in 1966; held further, payments for medical expenses incurred subsequent to such date were made pursuant to a plan for employees within the meaning of sec. 105, I.R.C. 1954. (2) C paid a mileage allowance of 15 cents per mile to K and S to cover the costs of certain business automobile travel. Held, the petitioners have failed to prove that they incurred or paid automobile expenses greater than the amounts allowed for 1966 and 1967; held further, payments in excess of the amounts allowed constituted dividends to the extent of earnings and profits in those years. (3) Held, S realized a gain from the sale of his Toronado to the corporation in 1968, taxable to him as ordinary income under sec. 1245, I.R.C. 1954. Gerald S. Walsh, 928 First Wis. Nat. Bk.bldg., 735 N. Water St., Milwaukee, Wis. and William J. Gerard for the petitioners. Lewis M. Porter, Jr., for the respondent. 1022 SIMPSON
Memorandum Findings of Fact and Opinion SIMPSON, Judge: The respondent determined deficiencies in the petitioners' income taxes as follows: Petitioners
1966
1967
1968
Melvin L. and Sophie Kirchmayer
$ 676.89
$417.69
$668.68
Arthur R. and Joyce M. Seidel
758.21
692.40
Kirchmayer-Seidel Co., Inc.
1,257.19
400.97
637.23
The issues for decision are (1) whether the individual petitioners are entitled to exclude from gross income and whether the corporate petitioner is entitled to deduct, certain payments for medical expenses; (2) whether the individual petitioners are entitled to exclude from gross income certain reimbursements for automobile expenses, and whether the corporate petitioner is entitled to a deduction for such reimbursements; and (3) whether the petitioner Arthur R. Seidel realized a gain in 1968 from the sale of his automobile to Kirchmayer-Seidel Co. *99 , Inc., and if so, whether such gain is taxable as ordinary income. Findings of Fact Some of the facts have been stipulated, and those facts are so found. The petitioners, Melvin L. and Sophie Kirchmayer, were husband and wife during the calendar years 1966 through 1968, who resided in Milwaukee, wisconsin at the time of filing their petitions in this case. They filed their joint 1966, 1967, and 1968 Federal income tax returns with the district director of internal revenue, Milwaukee, Wisconsin. They used the cash receipts and disbursements method of accounting and filed their returns for those years on a calendar year basis. The petitioners, Arthur R. and Joyce M. Seidel, are husband and wife, who maintained their residence in Milwaukee Wisconsin, at the time of filing their petitions in this case. They filed their joint 1966 and 1968 Federal income tax returns with the district director of internal revenue, Milwaukee, Wisconsin. They used the cash receipts and disbursements method of accounting and filed their returns for those years on a calendar year basis. The petitioner, Kirchmayer-Seidel Co., Inc. (the corporation), is a Wisconsin corporation having its principal office *100 and principal place of business in Milwaukee, Wisconsin, at the time the petitions were filed in this case. For the taxable years 1966, 1967, and 1968, it filed its Federal income tax returns with the district director of internal revenue, Milwaukee, Wisconsin. It used the cash receipts and disbursements method of accounting and filed its returns for those years on a calendar year basis. Mr. Kirchmayer and Mr. Seidel were registered professional engineers. After graduation from the University of Wisconsin in 1950, they worked for a period of time as employees in the engineering field before becoming independent manufacturer's agents. As independent agents, they were required to travel extensively throughout Wisconsin and upper Michigan. In 1955, Mr. Kirchmayer's daughter, Melody, contracted polio, and thereafter she required special medical care. In 1958, Mr. Kirchmayer suffered the first of a number of heart attacks, and thereafter, he too required special medical care. Mr. Kirchmayer and Mr. Seidel first associated in business in 1959 when they formed the corporation. From the time of its formation to the time of the trial of this case, they were its sole shareholders, sole officers, *101 and only employees. Each of them owned 50 percent of its outstanding stock, and each of them devoted 100 percent of his working time to its affairs. They were unrelated by blood or marriage. In the years 1964 through 1968, they reported equal compensation from the corporation on their income tax returns. The business of the corporation was essentially the same business that Mr. Kirchmayer and Mr. Seidel had carried on as self-employed individuals; However, at the time they agreed to associate in business, it was understood that Mr. Kirchmayer would service the Milwaukee area, while Mr. Seidel would perform the necessary travel beyond such area. The corporation was a member of the Electrical Equipment Representatives Association (EERA), with which it became affiliated in May of 1965. At that time, it received from EERA an information letter dated June 1964 called "Fax on Tax" published by a certified public accountant. Such letter provided in part: HOW TO GET "FREE" MEDICAL CARE - OR AT LEAST REASONABLE! Nobody believes this, the first time they hear about it. After they believe it, they are afraid the rules will be changed any 1023 minute. In the meantime, this beautiful *102 tax opportunity has been on the books for ten years! Read on - and get sick - deductibly!! The Regulation The following is a quotation from section #105(B) of the 1954 Internal Revenue Code - and it is still on the books: "… Gross income does NOT include amounts… paid, directly or indirectly, to the taxpayer for expenses incurred by him for medical care of the taxpayer, his spouse, and his dependents." * * * Since you must be an employee to receive these benefits tax-free, it appears that once again it is only the corporations that can take advantage of this idea - as far as owners are concerned. Prior to November 30, 1966, both Mr. Kirchmayer and Mr. Seidel incurred and paid certain medical expenses for themselves, their spouses, and their dependents in the years 1964, 1965, and 1966. On his Federal income tax returns for 1964 and 1965, Mr. Kirchmayer claimed itemized deductions pursuant to section 213 of the Internal Revenue Code of 1954[2] with respect to his medical expenses for those years. On his returns for 1964 and 1965, Mr. Seidel was unable to claim itemized deductions for medical expenses because such expenses did not exceed 3 percent *103 of his adjusted gross income for those years. Neither Mr. Kirchmayer nor Mr. Seidel claimed an itemized deduction on his 1966 return for any medical expenses incurred and paid in that year. At a formal meeting of the board of directors of the corporation on November 30, 1966, a resolution was adopted authorizing the corporation to (1) "reimburse the Officier [sic]-Stockholders (including their wives and dependents) for all reasonable medical expensives [sic] not covered by medical insurance as a fringe benefit," (2) to pay "the premiums for the Accidential [sic] Death & Dismemberment Group Policy for the Officer-Stockholders," (3) to pay "the premiums for the Group Insurance Plan for Life, Accident, Medical and Hospital Insurance for the Officer-Stockholders, including coverage for wives and dependents," and (4) to adopt "the Employees Profit Sharing Plan." Also on that date and pursuant to such resolution, the corporation made certain payments allegedly for medical expense reimbursement to Mr. Kirchmayer for the years 1965 and 1966, and to Mr. Seidel for the years 1964, 1965, and 1966. Thereafter, *104 the corporation reimbursed Mr. Kirchmayer and Mr. Seidel for medical expenses incurred and paid by them during the period December 1, 1966 to December 31, 1967. On December 23, 1968, a resolution was adopted in which it was provided that the corporation would "pay for all medical expenses incurred by Melvin L. Kirchmayer and Arthur R. Seidel on behalf of themselves, their spouses and dependents, for 1968." On December 24, the corporation reimbursed Mr. Kirchmayer and Mr. Seidel for medical expenses incurred and paid by them in 1968. Of the aggregate amounts paid by the corporation for medical expense reimbursement during the period 1964 through 1968, $4,994.89 was paid to Mr. Kirchmayer and $2,287.36 was paid to Mr. Seidel. Mr. Kirchmayer and Mr. Seidel did not include any of such amounts in their gross incomes, for those years, and the corporation claimed a deduction in 1966, 1967, and 1968 for amounts paid as medical expense reimbursement. On September 29, 1961, the corporation was authorized to pay reimbursement for expenses incurred by its employees in the operation of their automobiles for corporate business purposes at the fixed rate of 15 cents per mile. During the years 1961 *105 through 1966, such reimbursement was paid at such rate, and in 1966 such reimbursement was deducted by the corporation and excluded from gross income by Mr. Kirchmayer and Mr. Seidel. In 1967, the corporation paid reimbursement for such expenses at the rates provided by Rev. Proc. 66-10, 1966-1 C.B. 622 - 10 cents per mile for the first 15,000 miles and 7 cents per mile for miles in excess of 15,000. In 1968, the corporation did not pay reimbursement for any of such expenses incurred in that year; however, it did pay additional reimbursement to its employees for automobile expenses incurred in 1967 in an amount representing the differences between the amounts already paid them and the rate of 15 cents per mile authorized by the resolution of 1961. On its 1968 return, the corporation claimed a deduction with respect to such reimbursement, and the petitioners excluded the reimbursement from their gross incomes. In November of 1965, Mr. Seidel purchased an Oldsmobile Toronado which he subsequently used for business purposes. 1024 The cost of the automobile was $5,500.85. As part of the purchase price, Mr. Seidel traded a 1962 Chevrolet Impala on which he was allowed *106 $1,550.85. Because he claimed and was paid reimbursement for automobile expenses on the basis of a fixed rate per mile during the period 1965 through 1967, he did not claim a deduction for depreciation in connection with the business use of the Toronado on his returns for 1965, 1966, or 1967. In 1968, he sold the Toronado to the corporation, which maintained it for his use through November of that year. Mr. Seidel did not report the sale on his 1968 return. On its 1968 return, the corporation treated the Toronado as having an adjusted basis of $2,000 when it was traded on December 1 of that year and claimed depreciation with respect to such car in the amount of $1,300. The respondent determined that on the sale of the Toronado to the corporation in 1968, Mr. Seidel realized a gain of $605.72. In reaching such determination, the respondent also determined that the Toronado had an estimated useful life of 3 years. Thus, he computed the gain as follows: Cost of auto
$5,570.50
Less allowable depreciation 2,876.22
Basis at time of sale
$2,694.28
Selling price 4/1/68 3,300.00
Gain
$ 605.72
Opinion We must first decide whether certain payments made by the *107 corporation are excludable from the gross incomes of Mr. Kirchmayer and Mr. Seidel under section 105 and deductible by the corporation under section 162. Section 105 provides, in part: SEC. 105. AMOUNTS RECEIVED UNDER ACCIDENT AND HEALTH PLANS. (a) Amounts Attributable to Employer Contributions. - Except as otherwise provided in this section, amounts received by an employee through accident or health insurance for personal injuries or sickness shall be included in gross income to the extent such amounts (1) are attributable to contributions by the employer which were not includible in the gross income of the employee, or (2) are paid by the employer. (b) Amounts Expended for Medical Care. - Except in the case of amounts attributable to (and not in excess of) deductions allowed under section 213 (relating to medical, etc., expenses) for any prior taxable year, gross income does not include amounts referred to in subsection (a) if such amounts are paid, directly or indirectly, to the taxpayer to reimburse the taxpayer for expenses incurred by him for the medical care (as defined in section *108 213(e)) of the taxpayer, his spouse, and his dependents (as defined in section 152). * * * (e) Accident and Health Plans. - * * * (1) Amounts received under an accident or health plan for employees * * * shall be treated as amounts received through accident or health insurance. In addition, section 1.105-5(a), Income Tax Regs., provides, in part: In general, an accident or health plan is an arrangement for the payment of amounts to employees in the event of personal injuries or sickness. A plan may cover one or more employees, and there may be different plans for different employees or classes of employees. An accident or health plan may be either insured or noninsured, and it is not necessary that the plan be in writing or that the employee's rights to benefits under the plan be enforceable. However, if the employee's rights are not enforceable, an amount will be deemed to be received under a plan only if, on the date the employee became sick or injured, the employee was covered by a plan (or a program, policy, or custom having the effect of a plan) providing *109 for the payment of amounts to the employee in the event of personal injuries or sickness, and notice or knowledge of such plan was reasonably available to the employee. * * * In John C. Lang, 41 T.C. 352 (1963), we said at 355-356: As we interpret the regulation [sec. 1.105-5(a)], in order for there to be a plan, the employer must commit himself to certain rules and regulations governing payment; these rules must be made known to his employees as a definite policy; it is not enough that he merely lets it be known that payments may be made to deserving employees if they are absent from work for illness. The employer's rules, adopted or crystallized by policy or custom, may offer varying treatment for employees, but the rules must be determinable before the employee's sickness arises. * * * 1025 A plan presupposes a predetermined course of action under prescribed circumstances, * * * The regulatory provisions requiring a plan as a condition to the exclusion of benefits under section 105 have been upheld and applied in Chism's Estate v. Commissioner, 322 F. 2d 956 *110 (C.A. 9, 1963), affg. a Memorandum Opinion of this Court; Samuel Levine, 50 T.C. 422 (1968); Alan B. Larkin, 48 T.C. 629 (1967), affd. 394 F. 2d 494 (C.A. 1, 1968); John C. Lang, supra; Estate of Leo P. Kaufman, 35 T.C. 663 (1961), affd. 300 F. 2d 128 (C.A. 6, 1962). We agree with the respondent that the evidence is insufficient to establish that a plan existed prior to November 30, 1966. The only evidence that there was a plan prior to such date is the testimony of Mr. Kirchmayer that in 1965 he and Mr. Seidel agreed to have a plan. He did not testify as to the terms of any plan, as to who the plan would cover, the limits of the plan, or as to when such plan would take effect. As far as we can determine, such testimony at best indicates only a future design to institute a plan. While we are fully aware that Congress intended a liberal application of section 105 ( Alan B. Larkin, supra), nevertheless, it is clear that there must be a definite plan, and the evidence in this case, without more, is insufficient to establish the existence of a plan prior to November 30, 1966. John C. Lang, supra. *111 On the contrary, the actions of the parties were inconsistent with the existence of a plan prior to November 30, 1966. Before such date, there was no corporate resolution or other writing with respect to a plan, and no payments were made which purported to be pursuant to a plan. Also, for the year 1965, Mr. Kirchmayer claimed a deduction pursuant to section 213, and the evidence indicates that the reason that Mr. Seidel did not claim a deduction for that year or for 1964 pursuant to such section was that his expenses did not exceed the 3-percent limitation of such section in either of those years. Moreover, Mr. Seidel received reimbursement for the year 1964, a year in which not even the petitioners contend that a plan was in existence. Accordingly, we are unable to conclude that a plan within the meaning of section 105 existed prior to November 30, 1966. If a corporation pays the personal expenses of a shareholder, such payment may constitute a dividend to the extent of the earnings and profits of the corporation. Sec. 316; John L. Ashby, 50 T.C. 409 (1968); Challenge Manufacturing *112 Co. [Dec. 25,304], 37 T.C. 650 (1962). Mr. Kirchmayer and Mr. Seidel have made no argument that they did not receive adequate compensation for their past services. The decision was made to reimburse Mr. Seidel for his expenses in the years 1964, 1965, and 1966, although Mr. Kirchmayer, who had substantially greater medical expenses, received reimbursement only for his medical expenses incurred in 1965 and 1966. Under these circumstances, we hold that the petitioners have failed to prove erroneous the respondent's determination that the reimbursements for medical expenses incurred prior to November 30, 1966, were dividends to the extent of the earnings and profits of the corporation. The respondent concedes the existence of a plan on and after November 30, 1966; however, he contends that it was not a "plan for employees" within the meaning of section 105 because the resolution which adopted the plan expressly stated that the plan was for "Officer-Stockholders," and the primary purpose of the plan was the avoidance of Federal income taxes. To support his position, the respondent relies upon Alan B. Larkin, supra. In Larkin, we said at 48 T.C. 635: *113 The touchstone of section 105(b) is that the genesis of a medical benefits plan must be a purpose to benefit "employees" as against other persons or classes of persons. Cf. Edward P. Clay, 46 T.C. 505 (1966). Our approach in no way conflicts with the "liberalizing intent indicated by the legislative history" of section 105. See John C. Lang, supra; Estate of Leo P. Kaufman, 35 T.C. 663, 666 (1961), affd. 300 F. 2d 128 (C.A. 6, 1962); cf. Chism's Estate v. Commissioner, 332 F. 2d 956 (C.A. 9, 1963), affirming a Memorandum Opinion of this Court. That "liberalizing intent" was directed toward employees. * * * However, in our opinion, the Larkin case is distinguishable on its facts. In Larkin, payments were made principally to the stockholders and their father although their father received only nominal compensation from the corporation. Also, payments were made for expenses incurred by the dependents of stockholders, although dependents were not covered by the terms of the plan. Moreover, an officer-employee, who was *114 not a stockholder but who had 1026 been with the corporation from its inception was not covered under the plan during most of its existence, and when he was covered, his dependents were not included. Finally, coverage under the plan was limited to those whom the officers in their discretion considered should be covered. We held that under those circumstances the plan was not a "plan for employees" within the meaning of section 105. In the present case, Mr. Kirchmayer and Mr. Seidel were the only shareholders, the only officers, and the only employees of the corporation. Each owned 50 percent of its outstanding stock and each received equal compensation from the corporation during the years 1964 through 1968. Although the resolution which instituted the plan did state that it was to benefit "Officer-Stockholders," we are unwilling to conclude merely on the basis of that language that Mr. Kirchmayer and Mr. Seidel intended to benefit themselves as stockholders rather than as employees. In the years before us, the plan did in fact cover all the employees of the corporation, and there is no evidence that the resolution had the effect in later years of excluding some employees from *115 coverage. In view of Mr. Kirchmayer's prior heart attack and the illness of his daughter, he and Mr. Seidel must have realized, when they adopted the plan, that Mr. Kirchmayer was likely to derive substantially greater benefits under the plan; hence, the adoption of the plan would not provide benefits for them in proportion to their stockholdings in the corporation. It may be that when Mr. Kirchmayer and Mr. Seidel, as the directors of the corporation, adopted the several employee benefit plans in 1966, they were in part motivated by a realization of the tax benefits that could be derived from the establishment of such plans; yet, the existence of such a motivation does not justify our holding the plan invalid. If a plan within the meaning of section 105 was adopted, then they are entitled to the tax treatment provided by law for the benefits paid under such a plan. United States v. Isham, 17 Wall. (84 U.S.) 496 (1873). Accordingly, we hold that the plan in this case was, on and after November 30, 1966, a plan for employees within the meaning of section 105. It follows that payments made pursuant to such plan with respect to medical expenses incurred after such date *116 may be excluded from the gross incomes of Mr. Kirchmayer and Mr. Seidel and are deductible by the corporation under section 162. We must now decide whether the individual petitioners are entitled to exclude from their gross incomes, and whether the corporation is entitled to deduct, certain amounts allegedly paid as reimbursement for automobile expenses incurred in 1966 and 1967. When an emyployee operates his own automobile in his trade or business, he may deduct under section 162(a) the ordinary and necessary expenses of using such automobile for purposes of both local travel and travel away from home. By Rev. Proc. 66-10, 1966-1 C.B. 622, the respondent announced that he would accept a simplified method of computing deductions for the costs of operating an automobile used by an employee in his business. Under such method, an employee is allowed to deduct 10 cents per mile for the first 15,000 miles that the car was used in his business during the year, and 7 cents a mile for all *117 additional miles. That revenue procedure is applicable with respect to the taxable years in issue in this case, although it has been superseded for later years. Rev. Proc. 70-25, 1970-2 C.B. 506. In this case, the petitioners have offered no evidence to establish the actual costs of the use of the automobiles in their trade or business. They claim that by Rev. Rul. 63-13, 1963-1 C.B. 69, the respondent has recognized that 15 cents a mile is a reasonable allowance for use of an automobile for business purposes and that they are entitled to rely upon such ruling. The respondent takes the position that the petitioners have failed to show that they are entitled to rely upon the provisions of that revenue ruling. In his determination, he allowed the individual petitioners to exclude, and the corporation to deduct, reimbursements in excess of the rates provided in Rev. Proc. 66-10 for automobile expenses in 1966, and for 1967, he has approved of their using reimbursements at the rates provided in that revenue procedure. The petitioners have the burden of proving that they are entitled to treat as deductible automobile expenses more than would be allowed *118 to them under Rev. Proc. 66-10. J. Bryant Kasey [Dec. 30,297], 54 T.C. 1642 (1970), on appeal (C.A. 9, Feb. 22, 1971). In our opinion, they have not proved that they are entitled to rely upon Rev. Rul. 63-13, and since they have utterly failed to prove that they are entitled to treat 1027 as deductible automobile expenses more than the respondent has allowed, we must sustain the respondent's determination. To be deductible, the amount of the expenses of traveling away from home and the time, place, and business purpose of such travel must be substantiated in the manner provided by section 274(d). However, section 1.274-5(f), Income Tax Regs., provides, in part: (f) * * * The Commissioner may, in his discretion, prescribe rules under which - * * * (3) Mileage allowances providing for ordinary and necessary expenses of transportation while traveling away from home, will, if in accordance with reasonable business practice, *119 be regarded as equivalent to substantiation by adequate records or other sufficient evidence for purposes of paragraph (c) of this section of the amount of such traveling expenses * * * The expenses of an employee for local travel are subject to the rules of section 1.162-17 of the regulations, which provide, in part: (b) * * * (1) * * * The employee need not report on his tax return (either itemized or in total amount) expenses for travel, transportation, entertainment, and similar purposes paid or incurred by him solely for the benefit of his employer for which he is required to account and does account to his employer and * * * for which the employee is paid through advances, reimbursements, or otherwise, provided the total amount of such advances, reimbursements, and charges is equal to such expenses. * * * * * * (4) * * * For this purpose, the Commissioner in his discretion may approve reasonable business practices under which mileage, per diem in lieu of subsistence, and similar allowances providing for ordinary and necessary business expenses in accordance with a fixed scale *120 may be regarded as equivalent to an accounting to the employer. * * * (d) * * * (1) Although the Commissioner may require any taxpayer to substantiate such information concerning expense accounts as may appear to be pertinent in determining tax liability, taxpayers ordinarily will not be called upon to substantiate expense account information except those in the following categories: * * * (iv) Other taxpayers in cases where it is determined that the accounting procedures used by the employer for the reporting and substantiation of expenses by employees are not adequate. Pursuant to the authority contained in sections 1.274-5(f) and 1.162-17(b)(4), the respondent in Rev. Rul. 63-13, supra, held: In any case where a fixed mileage allowance not exceeding 15 cents per mile is used by an employer in payment of an employee's ordinary and necessary expenses of transportation while traveling away from home and the elements of time, place, and business purpose of the travel are substantiated *121 in accordance with paragraphs (b)(2) and (c) (other than subdivision (iii)(a) thereof) of section 1.274-5 of the regulations, then such an allowance shall be deemed as satisying [sic], with respect to such travel amounts, the substantiation requirements of section 1.274-5(c) of the regulations and the adequate accounting requirements of section 1.274-5(e) of the regulations. Also, where an employer grants such an allowance to an employee for ordinary and necessary transportation expenses not involving travel away from home, such an arrangement shall be considered to be an accounting to the employer within the meaning of section 1.162-17(b) of the regulations. It appears that some of Mr. Seidel's reported mileage was for travel away from home and that a small amount of Mr. Kirchmayer's was for such trips, although we have no breakdown as to the mileage for local travel and for travel away from home. The mileage for travel away from home is subject to the requirements of section 274(d), section 1.274-5, Income Tax Regs., and the first of the sentences quoted from Rev. Rul. 63-13, and the proof as to the number of miles traveled for such purposes *122 is inadequate. The petitioners introduced into evidence certain diaries which purport to be the corporate records of travel performed by them for business reasons. At the end of each diary is a statement of the mileage traveled during each month. However, the testimony revealed that the figure for each month for each employee was ascertained by taking the odometer reading as to the mileage that the car had traveled during the month and estimating the percentage of such mileage that was allocable to business purposes. There was no showing that the petitioners had ever actually measured the mileage that the car was used for business purposes or for personal purposes. Under these circumstances, the mileage reported for 1028 business purposes appears to be merely an approximation and not sufficiently definite or reliable to establish the number of miles the car was used for business purposes. See Rev. Proc. 66-10, supra. Moreover, there is a clear failure to substantiate in the manner required by section 274 the business purpose of each alleged trip in 1966 and 1967. The petitioners have attempted to prove business purpose by means of general circumstantial evidence, *123 but there is no evidence as to the specific purpose for each trip that they claimed was made for business purposes. Mr. Seidel and Mr. Kirchmayer testified generally as to the pattern and scope of their business travel. They also introduced evidence of the various customers they serviced, and their diaries listed certain trips that they reportedly made for business purposes. However, such testimony and such evidence falls short of the requirements of section 1.274-5(b)(2) and (c), Income Tax Regs., which requires specificity with respect to the business reason for each trip. William F. Sanford, 50 T.C. 823 (1968), affd. per curiam 412 F. 2d 201 (C.A. 2, 1969), cert. denied 396 U.S. 841 (1969); John L. Ashby, supra.Several of the trips reported by Mr. Kirchmayer and Mr. Seidel as having been made for business purposes were to places outside the area ordinarily served by their business, and there is no explanation as to the reasons for such trips. The failure to explain the purpose for such trips illustrates why their general testimony is inadequate and why it is necessary to have a statement as to the purpose of each trip. Nicholls, *124 North, Buse Company, 56 T.C. - (Aug. 31, 1971). While Rev. Rul. 63-13 provides that certain mileage allowance practices with respect to certain expenses of transportation not involving travel away from home shall be deemed to be an accounting to the employer within the meaning of section 1.162-17(b) of the regulations, under section 1.162-17(d) of the regulations, a taxpayer may nevertheless be called upon to substantiate his expenses. In the present case, the respondent has, in accordance with such regulations, decided to request substantiation of the expenses allegedly incurred by the petitioners for travel. It appears that there is sufficient reason for the respondent requesting such information, and the petitioners have clearly failed to provide it. Moreover, it is a fundamental prerequisite to the operation of Rev. Rul. 63-13 that any approved mileage allowance be in accordance with reasonable business practices. Secs. 1.162-17(b)(4), 1.274-5(f), Income Tax Regs. *125 ; Rev. Rul. 63-13, supra at 69. In 1961, the corporation was authorized to pay reimbursement for automobile expenses at the rate of 15 cents per mile. It actually paid reimbursement at such rate during the years 1961 through 1966, and in 1968, it paid as reimbursement for 1967 expenses the difference between the mileage allowance actually paid in 1967 and 15 cents per mile. Yet, there are no facts in evidence from which it can be determined that the adoption of the 15-cent rate in 1961 was based upon a reasonable business practice. There is no evidence of any actual automobile expenses incurred in connection with the business of the corporation prior to 1961 or by the individual petitioners as independent manufacturer's agents prior to 1959. As far as we can determine, the adoption of such rate was not justified by any actual cost experience. Also, there is no evidence of any actual automobile expenses for the period subsequent to 1961, and such records of the corporation as we have before us do not provide a basis for a determination that such rate was, during such period, in accordance with reasonable business practices. Compare Rev. Rul. 67-29, 1967-1 C.B. 42. *126 Under these circumstances, we are unwilling to conclude that the petitioners are entitled to rely upon Rev. Rul. 63-13. The reimbursements paid to Mr. Kirchmayer and Mr. Seidel for the operation of the automobiles, to the extent that such reimbursements have been determined to be excessive, also present the question - were they dividends or compensation? The respondent determined that such excess payments were dividends, and thus, the petitioners have the burden of proving such determination to be incorrect. American Properties, Inc., 28 T.C. 1100 (1957), affd. per curiam 262 F. 2d 150 (C.A. 9, 1958). Whether a payment to a shareholder-employee is additional compensation depends upon whether it was intended to be compensation for services rendered to the corporation. Klamath Medical Service Bureau, 29 T.C. 339 (1957), affd. 261 F. 2d 842 (C.A. 9, 1958), cert. denied 359 U.S. 966 (1959). 1029 In this case, the petitioners have not shown that the compensation paid to Mr. Kirchmayer and Mr. Seidel was *127 inadequate nor have they produced any other evidence indicating that the excessive reimbursements for travel expenses were intended as additional compensation. Accordingly, we must also sustain the respondent's determination in this respect. Challenge Manufacturing Co., 37 T.C. 650 (1962)
The remaining question for decision is whether Mr. Seidel realized a gain in 1968 as a result of the sale of his Toronado to the corporation, and if he did, whether such gain is taxable as ordinary income under section 1245. Under section 1001, Mr. Seidel is taxable on any gain that he realized on the sale of the Toronado. There is a gain if the amount realized for the sale of the Toronado, $3,300, exceeds his adjusted basis in the property. His adjusted basis, under section 1016, is computed by subtracting from his cost of the automobile, $5,500.85, any depreciation that was allowed or allowable. Since he elected no method of depreciation under section 167, the straightline method under section 167(b)(1) is used for this purpose. Sec. 1016(a)(2) (B); sec. 1.1016-3(a)(2), Income Tax Regs. *128 To compute such depreciation, it is first necessary to determine as of the date he acquired the property, its estimated salvage value, which is the amount that could reasonably be estimated as the resale price or trade-in value. Sec. 167; sec. 1.167(a)-1 (c), Income Tax Regs.; Massey Motors v. United States, 364 U.S. 92 (1960). From the cost of the property, the estimated salvage value is subtracted, and the allowable depreciation is determined by speading the difference over the estimated useful life of the automobile. For this purpose, the estimated useful life is determined by reference to the period which he could reasonably expect to use the Toronado in his trade or business. Sec. 1.167 (a)-1 (a) and (b), Income Tax Regs.; Massey Motors v. United States, supra; rev. Proc. 62-21, 1962-2 C.B. 418. Mr. Seidel contends that the adjusted basis and salvage value of the Toronado was $3,300, the amount he received for it from the corporation. He argues that such amount properly includes its resale or second-hand salvage value as of the date of its sale to the corporation, and that since the adjusted basis was not *129 less than the amount realized, Mr. Seidel realized no gain. The value of $3,300 was determined by reference to the NADA Official Used Car Guide (blue book) value for the resale of automobiles, in which this model was listed as having a value of $3,175 as of January 1968. Apparently, Mr. Seidel added to that amount $125 to cover the special equipment on the Toronado. However, there are several fallacies in Mr. Seidel's argument. In order to find the salvage value of the Toronado for the purposes of computing allowable depreciation, in October 1965 when he acquired the car, Mr. Seidel should have made a reasonable estimate of its salvage value at the end of its estimated useful life. Sec. 1.167(a)-1(c), Income Tax Regs.; Massey Motors v. United States, supra.There is no showing as to what was the reasonable estimate of the salvage value of such automobile as of that date. Furthermore, the blue book value used by Mr. Seidel is the amount for which retailers were generally selling such automobile in the area. Mr. Seidel could not expect to receive as much as an automobile dealer who is in the business of selling such cars. Finally, the blue *130 book value represented the amount for which such car was being sold in January of 1968, not the amount for which the car could be sold at the end of its estimated life. Massey Motors v. United States, supra. The respondent, on the basis of guidelines found in Rev. Proc. 62-21, supra, determined that the Toronado had an estimated useful life of 3 years and estimated the salvage value at the end of the 3-year period to be $2,000. Mr. Seidel challenged this computation by contending that the respondent should have used a 2-year estimated useful life and that the respondent had no basis for using $2,000 as the estimated salvage value. In support of his argument for using the 2-year estimated life, Mr. Seidel's only evidence was his testimony that his practice was to use a car for only 2 years in his work. However, the evidence does not support his statement. He in fact used the Toronado for approximately 2 1/2 years before he sold it to the corporation, and he continued to use it thereafter for an additional 8 months. He produced no evidence as to the periods during which he had used other cars in his work. He has the burden of proving the respondent's *131 determination to be incorrect, and his evidence manifestly falls short of doing so. Joseph W. Brown, 40 T.C. 861 (1963). 1030 Although he took issue with the salvage value determined by the respondent, Mr. Seidel has failed to supply any evidence as to a properly estimated salvage value of the Toronado at the time he acquired it. The retail value of the automobile as of January 1968 clearly does not suffice to establish the incorrectness of the figure used by the respondent. C. L. Nichols, 43 T.C. 135 (1964). At the trial, Mr. Seidel's counsel questioned the respondent's agent as to how he arrived at the figure of $2,000. Although the answers were not altogether satisfactory, the evidence was insufficient to establish that the $2,000 figure was determined arbitrarily. Joseph W. Brown, supra.It was the figure used by the corporation in filing its return for 1968 as the adjusted basis of the Toronado as of December 1 of that year. At the trial, Mr. Seidel's counsel also questioned the respondent's agent as to the amount the Toronado was considered to be used for business purposes in determining the adjustments to basis to be made *132 with respect to depreciation. However, the petitioner has completely failed to produce any evidence establishing that the respondent's computation was erroneous in this respect, and on brief, he has abandoned that argument. Mr. Seidel has failed to prove that he did not realize a gain from the sale of the Toronado, and he has failed to demonstrate error in the respondent's computation of the gain received as a result of the sale of such automobile. He has not disputed at all the respondent's determination that the gain is taxable under section 1245. Consequently, we must sustain the respondent's determination in this respect. Accordingly, Decisions will be entered under Rule 50. Footnotes
1. Cases of the following petitioners are consolidated herewith: Arthur R. Seidel and Joyce M. Seidel, docket Nos. 3992-68 and 5611-69;melvin L. Kirchmayer and Sophie Kirchmayer, docket Nos. 3993-68 and 5609-69; Kirchmayer-Seidel Co., Inc., docket Nos. 3994-68 and 5610-69.↩
2. All statutory references are to the Internal Revenue Code of 1954.↩