**AMERICAN FAMILY MUTUAL INSURANCE COMPANY,**
Plaintiff,

v.

**UNITED STATES of America, Defendant.**

No. 91–C–1035–C.

United States District Court,
W.D. Wisconsin.

Dec. 3, 1992.

Reconsideration Denied March 8, 1993.

Mutual Insurance Company in response to a deficiency asserted by the Internal Revenue Service in the amount of $433,141.10. The deficiency arose from payments made to employees by plaintiff under benefit plans established in late 1983 that plaintiff had treated as not being "wages" for the purposes of income tax withholding and Federal Insurance Contributions Act taxes.

Jurisdiction exists under 28 U.S.C. §§ 1340 and 1346(a). The case is before the court on cross-motions for summary judgment.

Plaintiff asserts that the reimbursements paid to employees for medical and dependent care assistance benefits are not part of its employees' gross income because they were made under a "flexible spending arrangement" or "cafeteria plan" recognized under the Internal Revenue Code. Defendant contends that reimbursements constitute taxable income to plaintiff's employees because the benefit plans plaintiff established as part of its cafeteria plan did not meet statutory exclusion requirements. I conclude that plaintiff's benefit plans fail to qualify for exclusion from gross income under § 105(b) and § 129(a) and that the reimbursements made by plaintiff to its employees pursuant to the benefit plans are subject to taxation.

To succeed on a motion for summary judgment, the moving party must show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Indiana Grocery, Inc. v. Super Valu Stores, Inc.*, 864 F.2d 1409, 1412 (7th Cir.1989). When the moving party succeeds in showing the absence of a genuine issue as to any material fact, the opposing party must set forth specific facts showing that there is a genuine issue for trial. Fed.R.Civ.P. 56(e); *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1355, 89 L.Ed.2d 538 (1986); *Bank Leumi Le-Israel, B.M. v. Lee*, 928 F.2d 232, 236 (7th Cir.1991). The opposing party cannot rest on the pleadings alone, but must designate specific facts in affidavits, depositions, answers to interrogatories or admissions that

Timothy C. Frautschi, Foley & Lardner, Milwaukee, WI, for American Family Mut. Ins. Co.

Mary E. Bielefeld, Trial Atty., Tax Div., Washington, DC, for U.S.

## OPINION AND ORDER

CRABB, Chief Judge.

This is a civil action for a refund of federal employment taxes paid by American Family

establish the existence of a genuine issue for trial. *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553. Also, if a party fails to make a showing sufficient to establish the existence of an essential element on which that party will bear the burden of proof at trial, summary judgment for the opposing party is proper. *Celotex,* 477 U.S. at 322, 106 S.Ct. at 2552.

For the purposes of deciding these motions only, I find from the parties' proposed findings of fact that the following material facts are undisputed.

## UNDISPUTED FACTS

Plaintiff American Family Mutual Insurance Company is a Wisconsin corporation with its principal offices in Madison, Wisconsin. Defendant is the United States of America. On November 14, 1983, plaintiff's personnel committee agreed to establish the American Family Flexible Compensation Plan, which was intended to be a "cafeteria plan" pursuant to 26 U.S.C. § 125(d), because it allowed employees to select between different types of benefits, taxable and nontaxable. Also on November 14, the personnel committee established the medical plan and dependent care assistant plan as two benefits available under the flexible compensation plan.

Plaintiff's employees first received notice of the cafeteria and benefit plans on November 22, 1983, when plaintiff distributed circulars to all employees describing the plans. On December 6, 1983, plaintiff distributed additional information that explained principal features of the plans and described how to enroll as a participant and apply for benefits. Under the dependent care assistance plan, plaintiff offered to reimburse expenses incurred from dependent care services provided by a third party. On December 29, 1983, plaintiff put the plans in final form.

Plaintiff intended that the cafeteria plan would apply retroactively by establishing an effective date of January 1, 1983. Pursuant to the plan, plaintiff reimbursed employees for qualifying expenses they incurred on or after January 1, 1983, even though the expenses were incurred before plaintiff's employees were aware of the plan. Also, pursuant to the plan, plaintiff allowed employees to carry over benefits from 1983 to 1984. When an employee's election of benefits was greater than the employee's gross salary for a pay period, the excess was carried over to the next pay period. All employees on plaintiff's payroll on November 22, 1983 became participants in the cafeteria plan automatically.

Plaintiff did not make modifications or amendments to the cafeteria plan, medical plan or dependent care assistance plan after the November 14, 1983 personnel committee meeting. Plaintiff made salary reductions in two payroll periods in 1983 to reflect cafeteria plan designations of qualifying benefits made by participating employees. Plaintiff reduced salaries by $58,000 on the December 16, 1983 payroll, and by $1,068,000 on the December 30, 1983 payroll. At the start of the next year, plaintiff reduced salaries by $189,000 on its January 13, 1984 payroll, by $154,000 on its January 27, 1984 payroll and by $127,000 on its February 10, 1984 payroll.

Defendant notified plaintiff by letter dated December 22, 1983, that its cafeteria plan might not qualify as a tax-free cafeteria plan under section 125 of the Internal Revenue Code. Plaintiff filed employment tax Forms 941 for its taxable three-month periods ending December 12, 1983 and March 31, 1984 and paid the tax shown as due on those forms. For purposes of these Forms 941, plaintiff did not treat any part of the salary reduction based on the cafeteria plan as "wages" subject to taxation.

On February 10, 1984, the Internal Revenue Service released IR 84–22, setting forth the Service's position that many flexible compensation plans similar to plaintiff's cafeteria plan did not qualify under section 125 of the Internal Revenue Code for tax-exempt status because these plans allowed participants to select benefits retroactively. The IRS stated that under a valid plan an employee may make a one-time election before the beginning of the year between cash and eligibility for reimbursement of qualified expenses. Under such a plan, if the employee selects reimbursement, but incurs expenses during the year that are less than the maximum amount of the election, the employee forfeits any further benefit. IR 84–22, p. 3. Accord-

ing to the release, an invalid plan allows the employee to select reimbursement, but returns to the employee the unused portion of the benefit in cash if the employee incurs fewer expenses during the year than allowable. *Id.* On May 7, 1984, the IRS published proposed regulations, in the form of questions and answers, reaffirming that a valid cafeteria plan required advance election before the period of coverage and forfeiture of unused benefits. Prop.Reg. § 1.125–1. Because the new regulations would invalidate the majority of cafeteria plans, the IRS provided for some transitional relief to protect existing cafeteria plans until September 4, 1984. *Id.*, Q & A 21. However, many cafeteria plans were not able to satisfy the conditions for transitional relief provided by the proposed regulations. Subsequently, Congress adopted liberal transitional relief for existing cafeteria plans in the Tax Reform Act of 1984.

Soon after, plaintiff ceased making reimbursements under its cafeteria plan. At some point, the IRS commenced an audit of plaintiff's cafeteria and benefit plans. Pursuant to a request by the IRS and plaintiff, the Internal Revenue Service District Director for Technical Advice issued a National Office Technical Advice Memorandum in May 1988, in which he stated that (1) plaintiff's cafeteria plan qualified for transitional relief under § 531(b)(5)(A) of the Tax Reform Act of 1984, but that (2) transitional relief was not available for the benefits paid under the medical plan and dependent care assistance plan for expenses incurred by employees in 1983 before the plan was adopted because of the retroactive feature of the plans. Under the Act, transitional relief (postponement of the effective date of the 1984 proposed regulations) was available to plans already in existence: benefits paid under those plans would not be subject to taxation if they failed solely because they failed to satisfy the May 1984 proposed regulations. The district director's decision was based on the determination that plaintiff's benefits plans would have failed in any event.

In a report dated October 27, 1988, the IRS proposed employment tax deficiencies against plaintiff representing Federal Insurance Contributions Act taxes under §§ 3101 and 3111 of the Code and withholding taxes under § 3402 of the Code in amounts of $297,815.95 and $135,325.96 respectively, for the three-month periods ending December 31, 1983 and March 31, 1984, for a total of $433,141.91. All of the employment tax deficiency proposed by the examination report was attributable to reimbursements paid by plaintiff under the benefit and cafeteria plans relating to employee expenses incurred on or after January 1, 1983 and prior to November 22, 1983, the date employees were notified of the benefit and cafeteria plans.

Plaintiff filed a protest with the IRS dated November 23, 1989, objecting to the proposed deficiency. After failing to reach an agreement with the Appellate Bureau of the Internal Revenue, plaintiff paid the entire $433,141.91 of employment taxes set forth in the notices of proposed deficiency. The Social Security and withholding taxes assessed against plaintiff were based on the benefits claims for expenses incurred between January 1, 1983 and November 22, 1983. Plaintiff filed timely claims for refunds with the IRS on June 18, 1991. The IRS denied these claims by letter on July 31, 1991. Plaintiff brought this suit on December 6, 1991.

## OPINION

*Background*

Section 61 of the Internal Revenue Code provides that "gross income" means all income from whatever source derived, including compensation for services, fees and commissions. 26 U.S.C. § 61. Gross income includes amounts received by an employee through accident or health insurance payments for personal injuries or sickness to the extent that such amounts are attributable to contributions by the employer that were not included in the employee's gross income or were paid by the employer. 26 U.S.C. § 105(a). Unless wages, benefits, or other income fall within an explicit exclusion to § 61, they are included in a taxpayer's gross income. *Commissioner v. Glenshaw Glass Co.*, 348 U.S. 426, 75 S.Ct. 473, 99 L.Ed. 483 (1955).

The Code requires that employers pay a stated percentage of employee "wages" as tax under the Federal Insurance Contribution Act, 26 U.S.C. § 3111(a), and that they withhold federal income taxes from their employees' wages. 26 U.S.C. § 3410. For FICA purposes, the term "wages" is defined to exclude amounts paid under a plan or system for medical and hospital expenses, 26 U.S.C. § 3121(a)(2); payments made to an employee for dependent care assistance if it is reasonable to believe employees will be able to exclude the payment under § 129 of the Code, 26 U.S.C. § 3121(a)(18); and payments as part of a cafeteria plan if it is reasonable to believe employees will be able to exclude the payments under section § 125 of the Code, 26 U.S.C. § 3121(a)(5)(G). Similarly, for withholding purposes, § 3401 of the Code excludes § 129 dependent care assistance benefits and § 105 medical reimbursement benefits from the definition of wages. 26 U.S.C. § 3401.

■ What these provisions mean is that plaintiff's obligation to pay employment taxes on benefits paid to employees is determined by whether its employees can exclude such payments as benefits paid pursuant to a qualified medical reimbursement plan under § 105 or a qualified dependent care assistant plan under § 129 or both. If the employees are entitled to exclude from gross income the retroactive benefit elections plaintiff provided them under §§ 105 or 129, plaintiff need not pay withholding or Social Security taxes on such benefits. On the other hand, if the benefits plaintiff provided the employees do not fall within the gross income exclusions outlined in §§ 105 and 129, plaintiff is responsible for paying employment taxes on those amounts.

The government's position is that the benefits plans plaintiff included under its short-lived cafeteria plan were invalid from the beginning because they provided benefits retroactively. Plaintiff argues that it was not until the May 1984 regulations were promulgated that taxpayers would have known that retroactive payments from an "enforceable" benefits plan such as plaintiff's constituted taxable income to the employees and that because the 1984 regulations changed the law

in this respect, plaintiff is entitled to the special tax treatment provided by Congress under the Tax Reform Act for all of the payments plaintiff made in 1983, not just those for 1983 expenses incurred after November 22, 1983. Plaintiff concedes that the law was clear before 1983 that retroactive payments made pursuant to an "unenforceable" plan constituted income, but it contends that a reasonable reading of the law in 1983 supports its position that retroactive payments of the sort it made to its employees were not income to the employees.

The parties disagree on both the nature of the burden of proof and how it should be allocated on the question of the validity of the benefits plan. Plaintiff argues that the government must show that there was a clearly articulable rule in existence in 1983 prohibiting retroactivity in enforceable plans, and that in the absence of such a showing the court must find that plaintiff's benefits plan fails only because of the new rule set out in the May 1984 proposed regulations. The government argues that the issue is governed by the rule that exemptions from taxation are considered matters of legislative grace and are construed narrowly in favor of the government. *Lima Surgical Assoc. v. United States*, 944 F.2d 885, 888 (Fed.Cir. 1991); *Weingarden v. Commissioner*, 825 F.2d 1027, 1029 (6th Cir.1987).

The government has the better of the argument. Because plaintiff is seeking to exempt income from taxation, it bears the burden of proving that the payments made pursuant to its 1983 benefits plans constituted exempt payments. It must show that a court looking at its benefits plans in 1983 would have found them qualifying plans under §§ 105 and 129.

*Section 125: Cafeteria Plan*

A "cafeteria plan" is a separate written benefit plan maintained by an employer for the benefit of its employees in which all participants are employees and each participant has the opportunity to select among two or more benefits consisting of cash and qualified benefits. 26 U.S.C. § 125(d)(1). This type of plan is advantageous to employees because it allows them to select benefits that fit their individual needs. Section 125 of the

Internal Revenue Code, enacted in 1978, provides, "... no amount shall be included in the gross income of a participant in a cafeteria plan solely because, under the plan, the participant may choose among the benefits of the plan." 26 U.S.C. § 125(a). So long as a benefit is "qualified" under § 125(d)(1), it retains its tax-exempt status despite inclusion in a cafeteria plan. Section 125(f) defines "qualified benefits" as "any benefit, which, with the application of subsection (a), is not includible in the gross income of the employee by reason of an express provision of this chapter." Therefore, if a benefit is excluded from gross income under another section of the Code, (such as § 105(b) or § 129(a)), it continues to be excluded from gross income when an employee selects it as a benefit under an employer's cafeteria plan.

Before 1984, the Internal Revenue Service had proposed no regulations governing the operation of cafeteria plans and had refused to issue private letter rulings on § 125. There were no cases or published rulings on the issue. David L. Raish, 397–2d *Tax Management: Cafeteria Plans,* at A–4 (1991) (tax portfolio pamphlet). On February 10, 1984, the IRS issued a news release warning that many cafeteria plans offered by employers may be invalid.

In order to grant some transitional relief to employers who received their first warning of the failure of their cafeteria plans in the news release and the subsequent May 1984 proposed regulations, Congress passed the 1984 Tax Reform Act. Under the general transition rule in the Act, any cafeteria plan in existence on February 10, 1984 that failed to satisfy the proposed regulations would not fail to be a valid cafeteria plan under § 125 solely because of that failure. P.L. 98–369, § 531(b)(5)(A). Because the proposed regulations included new proposed rules concerning the scope of § 105 and § 129, the same transitional relief was provided for failure to comply with those rules with respect to any benefit offered under a cafeteria plan.[1]

■ As an initial matter, defendant contends that plaintiff's cafeteria plan was not properly adopted and authorized on either November 14 or November 22, 1983, because the personnel committee did not have the authority to adopt and implement the plan and because the plan was not in writing on either of those dates as required by § 125(d)(1).

Defendant's argument is without merit. The officers of plaintiff's personnel committee were authorized to make decisions binding on the board of directors. Such authority is consistent with Wisconsin law which provides: "The board of directors shall also have authority to provide for or to delegate authority to an appropriate committee to provide for reasonable pensions, disability or death benefits, and other benefits or payments ..." Wis.Stat. § 181.19; *see also* Wis. Stat. § 180.0825(5). Plaintiff's personnel committee adopted the cafeteria and benefits plans on November 14, 1983, reduced the plans to writing in the form of circulars distributed to employees on November 22, 1983, and made the plans final on December 29, 1983. Plaintiff's cafeteria plan was properly adopted and executed by plaintiff's personnel committee.

■ I turn then to the substance of plaintiff's cafeteria plan. There is no doubt that plaintiff's plan is invalid under the May 1984 proposed regulations. Plaintiff's plan allowed employees to elect benefits based on expenses they incurred prior to the pay period in which they were given the option of electing benefits. The proposed regulations state that "a plan that permits a participant to revoke coverage under a dependent care assistance plan or coverage under an accident or health plan after the period of coverage has commenced will not be a cafeteria plan." Prop.Reg. § 1.125–1 (Q & A 8). This precludes any type of retroactive election of benefits. Moreover, the proposed regulations go on to address the scope of § 105 and § 129. In Q & A 17, the regulations provide in part:

1. Congress and the IRS have made subsequent changes to cafeteria plan requirements since 1984 that have no bearing on this case. Plaintiff discontinued its cafeteria plan in February 1984 in response to the IRS February 1984 news release.

For purposes of this rule, medical expenses that are incurred before the later of the date the plan is in existence and the date the participant is enrolled in the plan will not be treated as having been incurred during the period for which the participant is covered by the plan.... Reimbursements of expenses incurred prior to or after the specified period of coverage will not be excluded under section 105(b).

Prop.Reg. § 1.125–1 (Q & A 17). This proposed regulation makes clear that expenses incurred before or after the employer institutes a plan and before or after the period the employee elects coverage are not eligible for nontaxable reimbursement under § 105(b). The proposed regulations are equally clear on the scope of the § 129 exclusion:

For purposes of this rule, dependent care expenses will be treated as having been incurred when the dependent care is provided, and not when the participant is formally billed, charged for or pays for the dependent care. Also, for purposes of this rule, expenses that are incurred before the later of the date the program is in existence and the date the participant is enrolled in the program will not be treated as having been incurred during the period for which the participant is covered by the program.

Prop.Reg. § 1.125–5 (Q & A 18).

Even before May 1984, a cafeteria plan could provide nontaxable benefits only if the benefits included in the plan were nontaxable in their own right under an explicit exclusion in the Code. *See* 26 U.S.C. § 125(f) ("the term 'nontaxable benefit' means any benefit which, with the application of subsection (a), is not includible in the gross income of the employee"). Therefore, reimbursements under plaintiff's cafeteria plan are nontaxable only if each benefit plan met the requirements for the exclusion under § 105(b) and § 129(a) prior to the May 1984 proposed regulations.

*Medical Benefits Plan*

■ Neither the statute nor the implementing regulation made it clear in 1983 whether non-retroactivity was a prerequisite of a qualifying medical benefits plan if the plan was enforceable by the employee against the employer. The regulation distinguished between enforceable and unenforceable rights to benefits:

Section 105(e) provides that for purposes of sections 104 and 105 amounts received through an accident or health plan for employees, ... shall be treated as amounts received through accident or health insurance. In general, an accident or health plan is an arrangement for the payment of amounts to employees in the event of personal injuries or sickness.... An accident or health plan may be either insured or noninsured, and it is not necessary that the plan be in writing or that the employee's rights under the plan be enforceable. However, if the employee's rights are not enforceable, an amount will be deemed to be received under a plan only if, on the date the employee became sick or injured, the employee was covered by a plan (or a program, policy, or custom having the effect of a plan) providing for the payment of amounts to the employee in the event of personal injuries or sickness, and notice or knowledge of such plan was reasonably available to the employee.

26 C.F.R. § 1.105–5(a).

One reading of the regulation is that if an employee's right to payment is enforceable, then a plan need not be in effect at the time of injury or sickness and the employee need not have notice of the plan. Under this interpretation, plaintiff's plan would qualify for § 105(b) exclusion from gross income, assuming that it was enforceable as a matter of law. An equally plausible reading is that, by definition, an enforceable plan would be in writing and communicated to employees, whereas an unenforceable plan would be ad hoc by definition (and therefore potentially arbitrary) unless the custom or practice of paying medical expenses had been in effect and made known to employees before they became ill, not just before they incurred medical expenses. Another possibility is that the focus of the regulation is on the "notice" requirement. If rights are enforceable, the employer's commitment to the plan is clear; if the rights are unenforceable, notice is required in order to ensure that payments are

being made in fact "under an accident or health plan." *See* § 105(e)(1). In light of the ambiguous language of the statute and regulation, it is necessary to look elsewhere for guidance.

Plaintiff cites several cases in support of its position. In *Lang v. Commissioner*, 41 T.C. 352 (1963), plaintiff received sick pay from his employer when he was absent from work. He excluded the sick pay from his gross income under § 105(b). Plaintiff's employer had a general practice of continuing the pay of salaried employees when they were absent from work because of illness, but the decision to continue paying salary was completely within the discretion of the employer. Employees were not notified of any specific procedures concerning sick pay, and the employer had no obligation to provide sick pay. The Tax Court held that plaintiff was not eligible to exclude the sick pay from his gross income. Although the court could have focused on the fact that the employer's plan was not enforceable, it turned instead to the definition of a "plan" in general terms and stated

> As we interpret the regulation, in order for there to be a plan, the employer must commit himself to certain rules and regulations governing payment; these rules must be made known to his employees as a definite policy; it is not enough that he merely lets it be known that payments may be made to deserving employees if they are absent from work for illness.... [T]he rules must be determinable before the employee's sickness arises.

*Lang*, 41 T.C. 352. The court went on to analyze the legislative history of § 105 and concluded that the fact that the language of § 105(a) retained the language "accident or health insurance" was evidence of the intent of Congress to require a definite plan that "presupposes a predetermined course of action under prescribed circumstances...." *Id.*

Plaintiff argues that *Lang* requires notice and predetermined rules for plans providing unenforceable rights and, by implication, allows for retroactivity when a plan creates enforceable rights. Such an analysis reads too much into the opinion. Although it ap-pears that employee rights under the plan in *Lang* were unenforceable, the court did not hold explicitly that its analysis applied to only unenforceable rights. Additionally, subsequent case law has continued to define a "plan" as a predetermined course of action that necessarily applies prospectively only, at least concerning the time that the employee incurs expenses for medical care.

In *Seidel v. Commissioner*, 30 T.C.M. 1021 (1971), plaintiff's employer resolved to pay the medical expenses for plaintiff (one of two sole shareholders who were the only employees) on November 30, 1966. The employer had reimbursed plaintiff for both pre- and post-November 30 medical expenses and plaintiff excluded all payments made by the employer under § 105(b). The Tax Court held that only payments made with respect to expenses incurred *after* November 30 could be excluded because the payments made before that date were not made according to a plan within the meaning of § 105(b). In reaching this decision, the court relied on its opinion in *Lang* and held that a definite plan or policy must be in existence if reimbursements are to be excluded from gross income under § 105(b). Again, plaintiff contends that *Seidel* supports the distinction between enforceable and unenforceable rights and allows a plan to work retroactively when the plan provides enforceable rights. However, *Seidel* appears to support only a distinction between the time of the illness or injury and the time the expense was incurred by the employee. Although the court refused to allow exclusion under § 105(b) for the pre-plan expenses, it did allow exclusion for post-plan expenses, even though the plan was enacted *after* the plaintiff became ill.

In *Smith v. Commissioner*, 29 T.C.M. 1065 (1970), the employer had an unwritten policy of reimbursing employees' medical expenses dating back to 1963. It did not reduce the plan to writing until December 1965. The plaintiff employees excluded from income under § 105(b) reimbursements for medical expenses incurred in 1965. The Tax Court rejected the commissioner's contention that the payments to the plaintiffs should be included in their gross income because a plan did not exist until the end of 1965. Instead,

the court held that a plan had been in effect since 1963 and was simply reduced to writing in 1965. Although plaintiff American Family argues that the date of the plan was irrelevant to the court's decision, implicit in the court's analysis is the assumption that if a plan had not existed during 1965, the plaintiffs in *Smith* would have been unable to exclude from income the benefits paid to them by the employer for expenses incurred during 1965.

A revenue ruling on the scope of Reg. § 1.105–5(a) gives additional support to denial of the § 105(b) exclusion to retroactive plans. Rev.Rul. 71–403 dealt with employees who were reimbursed for medical expenses incurred after the employer instituted a plan and whose illnesses had arisen before the time of the plan. The revenue ruling stated explicitly that the employees' rights under the plan were enforceable. It went on to provide that reimbursement for medical expenses was excludable under § 105(b) for expenses incurred after the plan was adopted, even though the illnesses occurred prior to the enactment of the plan. The ruling reinforces the possibility that the distinction between enforceable rights and unenforceable rights was meant to target circumstances where a plan is enacted after an employee's illness arises but before any expense is incurred. If the plan is unenforceable, it must be made known to employees prior to the time of illness or injury to be valid; if the plan is enforceable, it must simply be in existence prior to the time an employee incurs an expense as a result of the illness.

I conclude that the retroactivity feature of plaintiff's medical benefits plan would have caused it to fail independently of the May 1984 proposed regulations. Plaintiff bears the burden of showing its plan fits within the exclusion provided by § 105(b). It has failed to cite any decision holding that a retroactive plan is valid. Moreover, the cases evidence a concern for preventing discriminatory treatment through ad hoc, arbitrary payments of medical expenses. Allowing retroactivity would permit post hoc judgments that discriminate. As the government points out, even written, enforceable plans can be drawn to discriminate after the fact in ways that are difficult for outsiders to discern. Therefore, plaintiff's medical plan is not eligible for transitional relief under the 1984 Tax Reform Act. Because plaintiff's medical plan is deficient because of its retroactivity feature, I need not reach defendant's other arguments on this issue.

*Section 129: Dependent Care Assistance Program*

Section 129 of the Internal Revenue Code provides that gross income of an employee does not include amounts paid or incurred by the employer for dependent care assistance provided to the employee if the assistance is rendered pursuant to a qualified dependent care assistance program. 26 U.S.C. § 129(a); *see also* 26 U.S.C. § 129(d) (stating requirements for valid program). Dependent care assistance is defined in the Code as "the payment of, or provision of, those services which if paid for by the employee would be considered employment-related expenses under section 21(b)(2)...." 26 U.S.C. § 129(e)(1). One requirement of a valid dependent care assistance program is that reasonable notification of the availability and terms of the program must be provided to eligible employees. 26 U.S.C. § 129(d)(6). The Treasury Department has issued no regulations to date under § 129, although the scope of § 129 is discussed in the February 10, 1984 News Release and the May 7, 1984 proposed regulations.

Plaintiff contends that because dependent care "assistance" is defined in § 129(e)(1) as "payment" or "provision" of services, nontaxability does not require notice to be given before the expenses are incurred so long as it is given before the employer reimburses the employee. Defendant responds that the language of § 129(d)(6) requires that the employer notify employees of the terms of the plan. The purpose of notice is to allow employees to make informed decisions regarding arrangements for dependent care assistance. If employees are forced to make such decisions without knowledge that the employer will reimburse them for expenses incurred, there is no reasonable notification as required by the statute.

Defendant's argument is convincing. The plain language of § 129(d)(6) requires reasonable notification of a plan. If such notice to employees occurs after they have made personal arrangement for dependent care assistance, the purpose of notice is subverted. Under plaintiff's construction of the statute, the requirement of reasonable notice would be meaningless. The employees would lose all the benefits of notice because they would have already made their arrangements for dependent care assistance or foregone such help. I conclude that dependent care assistance cannot qualify under § 129(a) unless it provides beneficiaries with advance notice to permit them to made informed decisions about dependent care. Plaintiff's plan did not provide such notice. Therefore, it failed to qualify under § 129(a). Reimbursements made pursuant to plaintiff's dependent care assistance plan were not excludable from the employees' gross income under § 129(a) when they were made.

For the reasons stated above, plaintiff medical plan and dependent care assistance plan fail independently of the May 1984 proposed regulations. Therefore, plaintiff's benefits plans are not eligible for the transitional relief provided for in the 1984 Tax Reform Act.

### ORDER

IT IS ORDERED that defendant United States of America's motion for summary judgment is GRANTED and plaintiff American Family Mutual Insurance Company's motion for summary judgment is DENIED. The Clerk of Court is directed to enter judgment accordingly and to close the case.

### ON MOTION FOR RECONSIDERATION

Plaintiff has filed a motion for reconsideration of the order granting defendant's motion for summary judgment entered herein on December 3, 1992. In that order, I concluded that the retroactivity feature of plaintiff's benefit plan contravened §§ 105(b) and 129 of the Internal Revenue Code. Since plaintiff's plan failed independently of the May 1984 proposed regulations, it was ineligible for the transitional relief provided in the 1984 Tax Reform Act. Plaintiff contends that the December 3 order failed to take into account the argument that the retroactive feature of plaintiff's benefit plan was granted express transitional relief from the May 1984 Proposed regulations by Q & A–27 of the December 1984 Proposed Regulations promulgated by the Treasury Secretary.

Under a section entitled "Rules Governing the Taxability of Benefits," A–27 provides:

> The following rules governing the taxability of a benefit are subject to the general transitional relief:
>
> .    .    .    .    .
>
> (iii) in order to qualify for the sec. 105(b), 120 or 129 exclusion from gross income, the medical, dependent care, or legal expense reimbursements must be for medical care, dependent care, or legal care incurred during the period for which the participant is actually covered by the benefit ...

The terms of A–27(iii) do not provide relief from the requirement that a plan be in effect when the expense is incurred. Rather, they presuppose the existence of a plan and preclude the retroactive election of a benefit not covered during the period when the expense is incurred. Moreover, the December proposed regulations were intended to provide transitional relief from the May 1984 proposed regulations and not from pre-existing exclusion requirements under §§ 105 and 129. Plaintiff's motion for reconsideration will be denied.