**Walter W. WOLLENBURG and Leola Wollenburg, Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

**No. 4:98CV3251.**

United States District Court, D. Nebraska.

Dec. 1, 1999.

Michael L. Jeffrey, Stephen A. Burt, Jeffrey, Hahn Law Firm, Lincoln, NE, for plaintiffs.

Evan J. Davis, U.S. Department of Justice, Tax Division, Washington, D.C., for defendant.

## · MEMORANDUM AND ORDER

KOPF, Chief Judge.

This case involves a claim for refund of $1,170.35 in federal income tax and interest paid by plaintiffs Walter and Leola Wollenburg in response to a disallowance by the Internal Revenue Service ("IRS"). Pending before the court are the parties' cross motions for summary judgment (filings 21 & 30), both of which are supported by evidentiary materials (filings 22 & 31). For the following reasons, I shall grant Defendant's motion for summary judgment and deny Plaintiffs' motion for summary judgment on the medical-expense-reimbursement issue, and I shall deny both parties' motions for summary judgment on the premium-payment issue.

## I. FACTS

The material facts regarding the medical-expense-reimbursement issue in this case are undisputed.[1] (Pls.' Br. Supp.Mot.Summ.J. at 3–4; Def.'s Mem. Resp. Pls.' Mot.Summ.J. at 4–5.) Walter and Leona Wollenburg are residents of Beatrice, Nebraska, where Walter Wollenburg is a farmer for federal income tax purposes. The Wollenburgs filed with the IRS a timely joint federal income tax return, Form 1040, for tax year 1993, claiming deductions for medical expenses incurred by Leola Wollenburg prior to December 16, 1993.

On December 16, 1993, Walter Wollenburg adopted an employee benefit program, more specifically known as a medical expense reimbursement plan, under a plan document created by "Agri-Plan/BizPlan." According to its terms, the plan sought to reimburse eligible employees for out-of-pocket medical and dental expenses incurred during the plan year, up to a certain limit. The plan also stated, "It is intended that the Plan meet the requirements for qualification under Code Sec. 105, and that benefits paid employees thereunder be excludable from their gross incomes by virtue of Sec. 105(b)." (Filing 22, Ex. 9 at 3.) Although Walter Wollenburg did not implement the medical expense reimbursement plan until December 16, 1993, the terms of the plan provided that the plan would "go into effect" on January 1 of the calendar year in which the plan was adopted—that is, on January 1, 1993, for purposes of this case.

On the same date Walter Wollenburg adopted the above-described medical expense reimbursement plan, Walter and Leola Wollenburg signed an "Employment Agreement," with Walter as employer and Leola as employee. (Filing 22, Ex. 2.) In this agreement, Walter agreed to compensate Leola and provide benefits as outlined in the "Plan Summary" in exchange for Leola's performance of various farm ser-

1. In support of their summary judgment motions, the plaintiffs and defendant have filed evidentiary materials (filings 22 & 31) that consist of photocopies of various documents that have not been authenticated. However, because neither party objects to this unauthenticated evidence, I shall consider it. *Sugarbaker v. SSM Health Care*, 190 F.3d 905, 911 (8th Cir.1999) (plaintiff must show prejudice by district court's reliance on unauthenticated documents in ruling on defendant's summary judgment motion); *Dautremont v. Broadlawns Hosp.*, 827 F.2d 291, 294–95 (8th Cir.1987) (plaintiff failed to demonstrate reversible error when district court considered unauthenticated and unverified documents in ruling on motions, and plaintiff failed to object to such deficiencies); 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2722, at 382–85 (1998) ("To be admissible, documents must be authenticated by and attached to an affidavit that meets the requirements of Rule 56(e) and the affiant must be a person through whom the exhibits could be admitted into evidence.... As is true of other material introduced on a summary-judgment motion, uncertified or otherwise inadmissible documents may be considered by the court if not challenged. The objection must be timely or ·it will be deemed to have been waived.") (footnotes omitted).

vices which Leola "is, and has been, performing." The agreement also stated, "The parties wish to formalize in writing their contractual relationship as Employer and Employee."

The IRS disallowed reimbursement of the medical expenses Leola Wollenburg incurred between January 1, 1993, (the effective coverage date of the medical expense reimbursement plan) and December 16, 1993, (the date the Wollenburgs adopted the medical expense reimbursement plan). The Wollenburgs paid the disallowance amount of tax—$905.00 plus $265.35 in interest—and filed a Claim for Refund, Form 843, for $1,170.35 for tax year 1993. (Filing 22, Ex. 4.) After waiting more than six months without hearing from the IRS regarding their claim, counsel for the Wollenburgs filed Form 2297 on June 1, 1998, which allowed the Wollenburgs to waive the requirement under the Internal Revenue Code that a notice of claim disallowance be sent to the taxpayer by certified or registered mail. (Filing 22, Ex. 5.) The filing of Form 2297 began the two-year limitations period for filing suit for refund of the disallowed claims.

## II. ANALYSIS

Plaintiffs argue in their brief in support of their motion for summary judgment that (1) reimbursements made by employer Walter Wollenburg to employee Leola Wollenburg pursuant to the above-described medical reimbursement plan between January 1, 1993, (the effective coverage date of the medical expense reimbursement plan) and December 16, 1993, (the date the Wollenburgs adopted the medical expense reimbursement plan) may be excluded from Leola's gross income under 26 U.S.C. § 105(b) and (2) health plan premiums paid by employer Walter Wollenburg are considered "employer-provided coverage" under 26 U.S.C. § 106(a) and are therefore excludable from Leola's gross income.

### A. Medical Expense Reimbursement

The Internal Revenue Code defines "gross income" as "all income from what-ever source derived, including ... [c]ompensation for services, including ... fringe benefits, and similar items." 26 U.S.C. § 61. "Unless wages, benefits, or other income fall within an explicit exclusion to § 61, they are included in a taxpayer's gross income." *American Family Mut. Ins. Co. v. United States,* 815 F.Supp. 1206, 1209 (W.D.Wis.1992) (citing *Commissioner v. Glenshaw Glass Co.,* 348 U.S. 426, 75 S.Ct. 473, 99 L.Ed. 483 (1955)). Because the plaintiffs in this case are seeking to exempt income from taxation, it is their burden to prove that the payments made by Walter Wollenburg to Leola Wollenburg between January 1, 1993, (the effective coverage date of the medical expense reimbursement plan) and December 16, 1993, (the date the Wollenburgs adopted the medical expense reimbursement plan) constituted exempt payments. *Id.* at 1210.

Section 105(a) of the Internal Revenue Code provides:

Except as otherwise provided in this section, amounts received by an employee through accident or health insurance for personal injuries or sickness shall be included in gross income to the extent such amounts (1) are attributable to contributions by the employer which were not includable in the gross income of the employee, or (2) are paid by the employer.

26 U.S.C. § 105(a). Section 105(b) further states that "gross income does not include amounts ... paid, directly or indirectly, to the taxpayer to reimburse the taxpayer for expenses incurred by him for the medical care ... of the taxpayer." The regulations implementing section 105 state in part:

Section[ ] ... 105(b) ... exclude[s] from gross income certain amounts received through accident or health insurance.... In general, an accident or health plan is an arrangement for the payment of amounts to employees in the event of personal injuries or sickness.... [I]t is not necessary that the

plan be in writing or that the employee's rights to benefits under the plan be enforceable. However, if the employee's rights are not enforceable, an amount will be deemed to be received under a plan only if, on the date the employee became sick or injured, the employee was covered by a plan ... providing for the payment of amounts to the employee in the event of personal injuries or sickness, and notice or knowledge of such plan was reasonably available to the employee.

26 C.F.R. § 1.105–5 (1999).

The parties agree, and the court concurs, that *American Family Mut. Ins. Co. v. United States*, 815 F.Supp. 1206, 1209 (W.D.Wis.1992), cited above, is the most relevant case to the medical-expense-reimbursement issue. *American Family* was an action for refund of federal employment taxes paid by an employer in response to a deficiency asserted by the IRS regarding payments made to employees under benefit plans that the employer treated as not being "wages" for purposes of income tax withholding and Federal Insurance Contributions Act taxes. The employer argued that reimbursements paid to employees for medical care under its flexible compensation plan were not part of its employees' gross income. The employees received notice of the benefit plan on November 22, 1983, but the employer reimbursed employees for qualifying medical expenses incurred on or after January 1, 1983, as allowed by the terms of the retroactive plan.

In addressing the "medical benefits" portion of the plan, *id.* at 1212, the court noted that neither 26 U.S.C. § 105(b) nor 26 C.F.R. § 1.105–5(a) make it clear whether non-retroactivity is a prerequisite of a qualifying medical benefits plan if the plan is enforceable by the employee against the employer. After analyzing section 105 and its implementing regulation, the few analogous cases that exist in this area, and policy considerations, the court concluded that medical expense reimbursements pursuant to an accident or health "plan," 26 C.F.R. § 1.105–5(a), is "a predetermined course of action that necessarily applies prospectively only, as least concerning the time that the employee incurs expenses for medical care." *American Family*, 815 F.Supp. at 1213. Because the employer bore the burden of showing that its plan fell within the gross-income exclusion in 26 U.S.C. § 105(b); because the employer failed to cite any case law establishing the validity of retroactive medical benefit plans; and because another result would promote discriminatory, post hoc judgments about employees' medical expenses[2], the court concluded, in part, that payments made under the benefit plan failed to qualify for exclusion from gross income under section 105(b) and that reimbursements made by the employer to its employees under the plan were subject to taxation. *Id.* at 1207 & 1214.

For the same reasons that supported the court's decision in *American Family*, I conclude that reimbursements made by

---

2. For example, and as argued by Defendant in this case:

If an employer could adopt an accident and health plan on December 31 of a particular year, giving "enforceable" rights to certain employees beginning on the prior January 1, then the potential for abuse and discrimination is obvious. An employer could review the medical expenses of his or her employees for the entire year. If one employee had particularly high medical bills, then the employer likely could draft a plan that excludes coverage for that employee. If employees had claims for a particular sickness, for example, then the employer could draft a plan that excluded

benefits for that sickness. The decision whether to offer a dental plan could be based, with hindsight, on how many employees bought braces for their children during the year. If the employer's spouse or friend had particularly high medical costs during the year, the plan could be drafted to include benefits for that favored employee. Put simply, if the Plaintiffs' argument is accepted, then the "nondiscrimination" purpose of Section 105(b) will be obliterated. An employer can choose to benefit or hurt certain employees with much greater precision, with the benefit of hindsight.

(Def.'s Mem.Resp. Pls.' Mot.Summ.J. at 17.)

Walter Wollenburg to Leola Wollenburg pursuant to the above-described medical reimbursement plan between January 1, 1993, (the effective coverage date of the medical expense reimbursement plan) and December 16, 1993, (the date the Wollenburgs adopted the medical expense reimbursement plan) are not excludable from Leola's gross income under 26 U.S.C. § 105(b).[3] *See also Seidel v. Commissioner of Internal Revenue,* 30 T.C.M. (CCH) 1021, 1971 WL 2308 (1971) (employer's payments to employees for medical expenses incurred prior to date corporation adopted medical reimbursement plan not excludable from employees' gross incomes); Leslie S. Klinger, *Financial and Estate Planning for Executives of the Closely–Held Business* ¶ 34.033 (Practising Law Institute 1985) (available in Westlaw at 157 PLI–EST 129) ("Retroactive payment of medical expenses incurred and used prior to implementation of the plan are not excludable from income under Section 105.").

## B. Premium Payments

The complaint, its attachments (filing 1), and the answer (filing 8) in this case are strictly limited to the issue discussed above—that is, reimbursement of medical expenses incurred by Leola Wollenburg prior to the adoption date of the medical expense reimbursement plan. As stated above, the parties submitted evidence supporting this claim and have stipulated to several facts relevant to the issue: the Wollenburgs' filing of an income tax return claiming those deductions, the amount of medical expense deductions claimed, the time frame for which the deductions were claimed, and the existence and contents of the medical expense reimbursement plan at issue.

In contrast, the parties—without stipulating to relevant facts, without submitting adequate evidence, and without including the issue in their pleadings—raise "an issue as to whether the premiums paid on Leola's behalf should also be excluded from her gross income for 1993" pursuant to 26 U.S.C. § 106. (Pls.' Br. Supp.Mot.Summ.J. at 15.) The plaintiffs, in a two-paragraph argument without citation to authority, assert that because Leola Wollenburg was an employee of Walter Wollenburg prior to the signing of their employment agreement, Leola may exclude from her gross income any premium payments paid by her employer pursuant to 26 U.S.C. § 106. In response, Defendant cites evidence describing Plaintiffs' work relationship since 1967 as evidence that Leola was a partner, not an employee, of Walter Wollenburg prior to the signing of the employment agreement.

While the evidence submitted by the parties in support of their summary judgment motions does discuss Leola's and Walter's functions and duties on the farm, it does not establish the most basic facts relevant to disposition of this issue—for example, whether, when, and in what amount Walter Wollenburg paid premiums on Leola's behalf; whether and when Leola sought to exclude that amount from her gross income on a tax return; and under which accident or health plan the premiums were paid (see filing 22, ex. 6, at 3–4 (discussing two health plans)). The parties have not filed the income tax return at issue, nor have they stipulated to relevant facts, as they did for the medical-expense-reimbursement issue.

Despite the fact that the parties have not included the premium-payment issue in their pleadings and have raised it for the first time in their summary judgment briefs, the court must nevertheless consider the issue. *See* Fed.R.Civ.P. 15(b) ("When issues not raised by the pleadings

---

**3.** In concluding that the gross-income exclusion in section 105(b) is inapplicable in this case, and in the interest of addressing the crux of the issue, I have assumed for the sake of argument that Leola Wollenburg was Walter Wollenburg's employee during the relevant time frame. If Leola was not Walter's' employee during the relevant time frame, section 105(b) would be similarly inapplicable because section 105 applies to accident or health plans provided by employers to employees.

are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings."); 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1219, at 189 (1990) ("The federal rules effectively abolish the restrictive theory of the pleadings doctrine."). However, the court cannot consider the issue without adequate evidence (and sufficient briefs). Therefore, the court shall deny without prejudice the parties' motions for summary judgment as to the premium-payment issue, grant the plaintiffs 10 days to amend their complaint, grant the defendant 10 days after service of the complaint to respond to the amended complaint, and give the parties 10 days after filing of the defendant's responsive pleading to file properly supported motions for summary judgment on the premium-payment issue, if the parties see fit to do so.[4]

Accordingly,

IT IS ORDERED:

1. On the medical-expense-reimbursement issue, Defendant's motion for summary judgment (filing 30) is granted and Plaintiffs' motion for summary judgment (filing 21) is denied;

2. The parties' motions for summary judgment (filings 21 & 30) on the premium-payment issue are denied without prejudice;

3. Plaintiffs are granted 10 days to amend their complaint to add the premium-payment issue;

4. Defendant is granted 10 days after service of the amended complaint to respond to the amended complaint;

5. The parties are granted leave to file properly supported motions for summary judgment on the premium-payment issue within 10 days after the filing of Defendant's responsive pleading; and

4. The parties should support any summary judgment motions they choose to file with adequate briefs addressing what constitutes an "employee" for purposes of 26 U.S.C.

6. Failure to file an amended complaint and responsive pleading shall result in dismissal of this case without further notice.

§ 106, or for purposes of the Internal Revenue Code in general, and discussing relevant regulations and case law.